J-A06029-18

2018 PA Super 335

IN RE: J.C.

APPEAL OF: J.C.

:  IN THE SUPERIOR COURT OF
:        PENNSYLVANIA
:
:
:
:
:
:
:
:  No. 1391 WDA 2017

Appeal from the Order July 5, 2017
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s):  CP-02-JV-0001886-2011

BEFORE:   BENDER, P.J.E., SHOGAN, J., and STRASSBURGER*, J.

OPINION BY SHOGAN, J.:                    FILED DECEMBER 10, 2018

Appellant, J.C., appeals from the order that granted the Commonwealth's request for involuntary commitment under the Court-Ordered Involuntary Treatment of Certain Sexually Violent Persons Statute ("Act 21"), 42 Pa.C.S. §§ 6401-6409.  Upon careful review, we vacate the order.

The trial court summarized the extensive history of this case as follows:

> Before finding [then thirteen-year-old] J.C. delinquent, this court first - by stipulation of the Office of Children, Youth and Families ("CYF") and J.C.'s guardian - found J.C. dependent on April 9, 2010. J.C. was ordered to remain at Mel Blount Youth Home ("MBYH") in Washington County because: (1) he had no home and (2) his mother was unable to care for J.C. due to her health and his age.
>
> While at MBYH, J.C. sexually assaulted another child and then admitted to the assault at a hearing on April 26, 2011,

_____
*   Retired Senior Judge assigned to the Superior Court.

before the Washington County Court. The Washington County Court transferred the adjudicatory and dispositional hearings to this court. On November 7, 2011, this court adjudicated J.C. [delinquent] of one count of Indecent Assault,[1] deferred disposition, and detained J.C. at Shuman Center pending a mental health evaluation. On November 21, 2011, the [c]ourt again deferred disposition and ordered J.C. remain detained with permission to place consistent with the mental health evaluation, recommendation and the availability of a bed at Adelphoi Village (which occurred on November 25, 2011). J.C. was ordered to complete a sex offenders' program, and a commitment review was scheduled for April 9, 2011. Probation now shared responsibility for J.C.'s care with CYF.[2]

> [1] 18 Pa.C.S.A. § 3126(a)(7), a (M1) at Petition T169017 case number CP-02-JV-1886-2011.

> [2] The written commitment order was entered on November 29, 2011.

After J.C.'s initial secured commitment to Adelphoi [V]illage on November 25, 2011, the court conducted eight shared responsibility (or "dual" delinquency/dependency permanency placement) hearings prior to May 19, 2014. At his May 19, 2014, dual hearing, the court found that J.C. had progressed sufficiently in the sex offender treatment program to permit transition to Adelphoi-SAL—a supervised[,] non-secure community, and independent-living facility. J.C. was placed at Adelphoi-SAL on May 23, 2014. During J.C.'s placement at Adelphoi-SAL, his mother passed away—ending any chance for J.C. to return to his home. At the January 21, 2015 dual hearing, J.C. displayed moderate progress and was scheduled to graduate from high school on time. Probation and CYF's permanency plan for J.C. was to obtain full[-]time employment or part-time employment while being a full-time student. CYF was ordered to provide ongoing post-secondary college vocational planning and take J.C. on college tours. Additionally, he would still need a permanent place to live. The next dual review was scheduled for April 20, 2015.

On March 10, 2015, prior to the next review hearing, this court found that J.C. had failed to adjust ("FTA") at Adelphoi-SAL independent living because he was caught viewing pornography.

J.C. was committed to Cove Prep for his second secure treatment program with a review scheduled for June 29, 2015.

J.C. remained at Cove Prep for the next eleven months and received extensive sex offender therapy. At J.C.'s January 25, 2016, dual hearing, this court released J.C. to the unsecure community independent living program based on his progress with sex offender therapy. For the next seven months, J.C. remained in the Auberle GOAL community independent living program. During this time, he received outpatient sex offender relapse prevention therapy in which he was permitted to gain employment, attend therapy sessions independently, and use public transportation.

Prior to an FTA petition being filed, J.C. was removed from the GOAL program and detained at the Auberle Delinquency Hartman Shelter for possessing an unauthorized cell phone and two computer memory sticks—one of which contained nude photos of underage boys. After a Detention/Shelter Hearing on August 22, 2016, this court ordered J.C. to remain detained at the secure Hartman Shelter.

On September 1, 2016, this court found that J.C. violated the terms of his probation by: (1) having possession of 2 memory sticks in his back pack and (2) failing to adjust at the Auberle GOAL program. This court modified J.C.'s disposition, released him from Auberle GOAL, and placed him at Cove Prep for his third secure sexual offender's treatment program. This court found that placement at Cove Prep was the least restrictive placement—consistent with public protection—and best suited for J.C.'s treatment, supervision, rehabilitation and welfare.

J.C.'s public defender filed a petition for writ of habeas corpus relying on the plain language of 42 Pa.C.S.A. § 6353(a) (Limitation on and Change in Place of Commitment; General Rule), contending that J.C. had been illegally detained and, for more than a year, the court was legally obligated to release him from Cove Prep for lack of jurisdiction. Prior to J.C.'s dispositional review hearing on January 19, 2017, the court heard oral argument on J.C.'s habeas corpus petition which it denied but agreed to reconsider after reviewing the parties' briefs. The court also conducted an ACT 21 dispositional review hearing to determine whether a prima facie case for J.C.'s involuntary treatment existed under ACT 21. This court found a prima facie case and ordered the County Department of Human

Services to file an ACT 21 petition. This court appointed attorney James Robertson to represent J.C. in the ACT 21 proceedings.

The court also found that J.C. had made minimal progress toward alleviating the tendencies which necessitated the original placement because J.C. had recently authored graphic materials detailing sexual fantasies describing his attraction to young boys and vividly describing the genitals of young boys. The letters had been reviewed by both Cove Prep staff and Probation, and both agreed that the letters were not of a therapeutic nature and were intended for J.C.'s arousal.

Cove Prep and Probation both addressed their concerns to J.C. and re-directed him. At this point in the treatment process, therapy was concentrating on ability, or lack of ability, to control his attraction to young boys. J.C. admitted he has a serious issue and struggles daily with his attraction to young boys. He stated to probation he is unsure of his ability to control this attraction to boys while in the community. This court found that the current disposition provided balanced attention to the protection of the community, the imposition of accountability for offenses committed, and the development of competencies to enable the juvenile to become a responsible and productive member of the community. This court ordered J.C. to remain at Cove Prep.

The motion for reconsideration of his petition for habeas was denied on February 16, 2017, with the court adopting the Commonwealth's legal argument. On March 8, 2017, J.C.'s attorney filed a Motion to Certify Interlocutory Order for Appeal of this reconsideration denial. This court granted that motion on April 7, 2017, finding that the case presents a controlling question of law as to which there is substantial ground for difference of opinion, and an immediate appeal will materially advance the ultimate termination of the matter.[3]

> [3] On July 24, 2017, the Superior Court of Pennsylvania granted J.C.['s] appeal of this court's interlocutory order dated February 16, 2017[,] denying J.C.'s petition for habeas corpus relief. The court filed its opinion to this appeal on August 29, 2017.[

The court conducted a dual placement review and ACT 21 hearing on June 27, 2017. At the hearing's conclusion, this court found by clear and convincing evidence that J.C. has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes him likely to engage in an act of sexual violence and otherwise meets all criteria necessary for continued commitment under ACT 21, 42 Pa.C.S.A. § 6403. The court was statutorily bound to commit J.C. to the Pennsylvania Sexual Responsibility and Treatment Program at Torrance State Hospital ("Torrance") for a period of one year and not permitted any other treatment options. The court's only other option by law was to close his case and release him.

Trial Court Opinion, 10/17/17, at 1-6.

In an order entered July 5, 2017, pursuant to 42 Pa.C.S. § 6403(d), the trial court committed Appellant for a period of one year to the Sexual Responsibility and Treatment Program. However, the determination was stayed for ten days in order to provide Appellant's counsel time to file a motion for reconsideration. Appellant filed a motion for reconsideration, which the trial court denied on July 26, 2017. This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

On November 20, 2017, Appellant filed his appellate brief with this Court. On January 23, 2018, the county solicitor for Allegheny County filed a responsive brief. Also on January 23, 2018, we notified the parties that this matter would be argued before this Court on February 28, 2018. On February 21, 2018, Appellant filed a motion to amend his brief in order to include an additional argument alleging that Commonwealth v. Muniz, 164 A.3d 1189 (Pa. 2017), has altered the law regarding the civil commitment at

issue in this case and that the commitment should be construed as punishment. The county solicitor filed a response to the motion. On March 5, 2018, this Court entered an order granting Appellant's request to amend his brief "limited to a discussion of the recent decisions in Commonwealth v. Muniz, 164 A.3d 1189 (Pa. 2017) and Commonwealth v. Butler, 173 A.3d 1212 (Pa. Super. 2017) and their impact on this case." Order, 3/5/18. Appellant has filed a supplemental brief, and the county solicitor has filed an answer thereto.

Appellant presented the following issue for our review in his initial appellate brief:

> 1. Did the Trial Court err in finding by clear and convincing evidence that [Appellant] has a mental abnormality or personality disorder and has serious difficulty in controlling sexually violent behavior?

Appellant's Brief at 6. In his supplemental brief, Appellant sets forth the following issue:

> 1. Does 42 Pa.C.S. § 6403 ("Act 21") constitute punishment as determined by a Muniz-Butler analysis.

Appellant's Supplemental Brief at 5.

We will first address the issue raised by Appellant in his supplemental brief as it is dispositive. Appellant argues that, pursuant to recent case law, Act 21 is unconstitutional. Appellant's Supplemental Brief at 6-18. Essentially, Appellant contends that, under our Supreme Court's decision in Muniz and this Court's decision in Butler, we should hold Act 21 to be

unconstitutional because the provisions of the statute impermissibly constitute punishment. Appellant asserts that, once the provisions of Act 21 are properly deemed to be punishment, the statute must be considered to be unconstitutional because its implementation relies upon an incorrect burden of proof. Appellant's Supplemental Brief at 12. After thorough review, we are constrained to agree.

We observe that a challenge to the application of a statute by a trial court presents a question of law. Commonwealth v. Perez, 97 A.3d 747, 750 (Pa. Super. 2014). Where an issue presents a question of law, the appellate court's standard of review is de novo. Commonwealth v. Descardes, 136 A.3d 493, 496-497 (Pa. 2016). In addition, our scope of review is plenary. Id.

To the extent that Appellant raises an issue challenging the constitutionality of a statute, "[w]e note that duly enacted legislation carries with it a strong presumption of constitutionality." Commonwealth v. Turner, 80 A.3d 754, 759 (Pa. 2013) (citation omitted). "A presumption exists '[t]hat the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth' when promulgating legislation." Commonwealth v. Baker, 78 A.3d 1044, 1050 (Pa. 2013) (quoting 1 Pa.C.S. § 1922(3)). "Thus, a statute will not be found unconstitutional unless it clearly, palpably, and plainly violates the Constitution. If there is any doubt as to whether a challenger has met this

high burden, then we will resolve that doubt in favor of the statute's constitutionality." Commonwealth v. Neiman, 84 A.3d 603, 611 (Pa. 2013) (quotation marks and citations omitted).

As a prefatory matter, we set forth an extensive overview of the statutes at issue. Section 6352 of the Juvenile Act provides, in pertinent part, as follows:

§ 6352. Disposition of delinquent child

(a) General rule. If the child is found to be a delinquent child the court may make any of the following orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation, and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community:

* * *

(2) Placing the child on probation under supervision of the probation officer of the court . . ., under conditions and limitations the court prescribes.

42 Pa.C.S. § 6352(a)(2).

A child who has been adjudicated delinquent for certain acts of sexual violence and committed pursuant to Section 6352, and who remains committed upon attaining twenty years of age, is subject to assessment by the Sex Offender Assessment Board ("SOAB") and a subsequent court review pursuant to 42 Pa.C.S. § 6358. Section 6358 states:

§ 6358. Assessment of delinquent children by the State Sexual Offenders Assessment Board

- 8 -

(a)  General rule.--A child who has been found to be delinquent for an act of sexual violence which if committed by an adult would be a violation of 18 Pa.C.S. § 3121 (relating to rape), 3123 (relating to involuntary deviate sexual intercourse), 3124.1 (relating to sexual assault), 3125 (relating to aggravated indecent assault), 3126 (relating to indecent assault) or 4302 (relating to incest) who is committed to an institution or other facility pursuant to section 6352 (relating to disposition of delinquent child) and who remains in such facility upon attaining 20 years of age shall be subject to an assessment by the board.

(b)  Duty of probation officer.--Ninety days prior to the 20th birthday of the child, the probation officer shall have the duty to notify the board of the status of the delinquent child and the institution or other facility where the child is presently committed.  The probation officer shall assist the board in obtaining access to the child and any information required by the board to perform the assessment, including, but not limited to, the child's official court record and complete juvenile probation file.

* * *

(c)  Assessment.--The board shall conduct an assessment, which shall include the board's determination of whether or not the child is in need of commitment for involuntary treatment due to a mental abnormality as defined in section 6402 (relating to definitions) or a personality disorder, either of which results in serious difficulty in controlling sexually violent behavior.  Upon the completion of the assessment pursuant to this section, the board shall provide the assessment to the court.  . . .

(d)  Duty of court.--The court shall provide a copy of the assessment by the board to the probation officer, the district attorney, county solicitor or designee and the child's attorney.

(e)  Dispositional review hearing.--Where the board has concluded that the child is in need of involuntary treatment pursuant to the provisions of Chapter 64 (relating to court ordered involuntary treatment of certain sexually violent persons), the court shall conduct a hearing at which the county solicitor or a designee, the probation officer and the child's attorney are present.  The court shall consider the assessment, treatment information and any other relevant information

- 9 -

regarding the delinquent child at the dispositional review hearing pursuant to section 6353 (relating to limitation on and change in place of commitment), which shall be held no later than 180 days before the 21st birthday of the child. . . .

      (f)   Subsequent proceeding.--If, at the conclusion of the dispositional review hearing required in subsection (e), the court finds there is a prima facie case that the child is in need of involuntary treatment under the provisions of Chapter 64, the court shall direct that the county solicitor or a designee file a petition to initiate proceedings under the provisions of that chapter.

42 Pa.C.S. § 6358.

Chapter 64 of the Judicial Code encompasses Act 21 and applies to the commitment of sexually violent children found to be in need of involuntary treatment pursuant to Section 6358.  Section 6401 provides as follows:

6401. Scope of Chapter

      This chapter establishes rights and procedures for the civil commitment of sexually violent delinquent children who, due to a mental abnormality or personality disorder, have serious difficulty in controlling sexually violent behavior and thereby pose a danger to the public and further provides for additional periods of commitment for involuntary treatment for said persons.

42 Pa.C.S. § 6401.

The procedures to be followed for imposing periods of commitment for involuntary treatment are detailed in subsequent sections of Act 21.  Section 6403 addresses the procedures to be followed for determining if an individual requires commitment for involuntary treatment under Act 21, and states as follows:

§ 6403. Court-ordered involuntary treatment

(a) Persons subject to involuntary treatment.—A person may be subject to court ordered commitment for involuntary treatment under this chapter if the person:

(1) Has been adjudicated delinquent for an act of sexual violence which if committed by an adult would be a violation of 18 Pa.C.S.A. § 3121 (relating to rape), 3123 (relating to involuntary deviate sexual intercourse), 3124.1 (relating to sexual assault), 3125 (relating to aggravated indecent assault), 3126 (relating to indecent assault) or 4302 (relating to incest).

(2) Has been committed to an institution or other facility pursuant to section 6352 (relating to disposition of delinquent child) and remains in the institution or other facility upon attaining 20 years of age.

(3) Is in need of involuntary treatment due to a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence.

(b) Procedures for initiating court-ordered involuntary commitment.—

(1) Where, pursuant to the provisions of section 6358(f) (relating to assessment of delinquent children by the State Sexual Offenders Assessment Board), the court determines that a prima facie case has been presented that the child is in need of involuntary treatment under the provisions of this chapter, the court shall order that a petition be filed by the county solicitor or a designee before the court having jurisdiction of the person pursuant to Chapter 63 (relating to juvenile matters).

(2) The petition shall be in writing in a form adopted by the department and shall set forth the facts constituting reasonable grounds to believe the individual is within the criteria for court-ordered involuntary treatment as set forth in subsection (a).

The petition shall include the assessment of the person by the board as required in section 6358.

(3) The court shall set a date for the hearing which shall be held within 30 days of the filing of the petition pursuant to paragraph (1) and direct the person to appear for the hearing. A copy of the petition and notice of the hearing date shall be served on the person, the attorney who represented the person at the most recent dispositional review hearing pursuant to section 6358(e) and the county solicitor or a designee. The person and that attorney who represented the person shall, along with copies of the petition, also be provided with written notice advising that the person has the right to counsel and that, if he cannot afford one, counsel shall be appointed for the person.

(4) The person shall be informed that the person has a right to be assisted in the proceedings by an independent expert in the field of sexually violent behavior. If the person cannot afford to engage such an expert, the court shall allow a reasonable fee for such purpose.

(c) Hearing.—A hearing pursuant to this chapter shall be conducted as follows:

(1) The person shall not be called as a witness without the person's consent.

(2) The person shall have the right to confront and cross-examine all witnesses and to present evidence on the person's own behalf.

(3) The hearing shall be public.

(4) A stenographic or other sufficient record shall be made.

(5) The hearing shall be conducted by the court.

(d) Determination and order.—Upon a finding by clear and convincing evidence that the person has a mental abnormality or personality disorder which results in

serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence, an order shall be entered directing the immediate commitment of the person for inpatient involuntary treatment to a facility designated by the department. The order shall be in writing and shall be consistent with the protection of the public safety and the appropriate control, care and treatment of the person. An appeal shall not stay the execution of the order.

42 Pa.C.S. § 6403 (emphasis added).

The limitations of Act 21 on the duration of commitment and subsequent review procedures are set forth as follows:

§ 6404. Duration of commitment and review

(a) Initial period of commitment.—The person shall be subject to a period of commitment for inpatient treatment for one year.

(b) Annual review. —

(1) Sixty days prior to the expiration of the one-year commitment period, the director of the facility or a designee shall submit an evaluation and the board shall submit an assessment of the person to the court.

(2) The court shall schedule a review hearing which shall be conducted pursuant to section 6403(c)(relating to court-ordered involuntary treatment) and which shall be held no later than 30 days after receipt of both the evaluation and the assessment under paragraph (1). Notice of the review hearing shall be provided to the person, the attorney who represented the person at the previous hearing held pursuant to this subsection or section 6403, the district attorney and the county solicitor or a designee. The person and the person's attorney shall also be provided with written notice advising that the person has the right to counsel and that, if he cannot afford one, counsel shall be appointed for the person. If the court determines by clear and convincing evidence that the person continues to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment due to a mental abnormality or personality

disorder that makes the person likely to engage in an act of sexual violence, the court shall order an additional period of involuntary inpatient treatment of one year; otherwise, the court shall order the department, in consultation with the board, to develop an outpatient treatment plan for the person. The order shall be in writing and shall be consistent with the protection of the public safety and appropriate control, care and treatment of the person.

42 Pa.C.S. § 6404(a), (b) (emphasis added).

In addition, the following language in Section 6404 also governs a transfer of an individual from involuntary inpatient treatment to involuntary outpatient treatment provided that certain criteria are met by the individual:

(c)  Outpatient treatment plan. —

(1)  If at any time the director or a designee of the facility to which the person was committed concludes the person no longer has serious difficulty in controlling sexually violent behavior in an inpatient setting, the director shall petition the court for a hearing. Notice of the petition shall be given to the person, the attorney who represented the person at the previous hearing held pursuant to subsection (b) or section 6403, the board, the district attorney and the county solicitor. The person and the person's attorney shall also be provided with written notice advising that the person has the right to counsel and that, if he cannot afford one, counsel shall be appointed for the person.

(2)  Upon receipt of notice under paragraph (1), the board shall conduct a new assessment within 30 days and provide that assessment to the court.

(3)  Within 15 days after the receipt of the assessment from the board, the court shall hold a hearing pursuant to section 6403(c). If the court determines by clear and convincing evidence that the person continues to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence, the court

- 14 -

shall order that the person be subject to the remainder of the period of inpatient commitment. Otherwise, the court shall order the department, in consultation with the board, to develop an outpatient treatment plan for the person.

(4) The department shall provide the person with notice of the person's right to petition the court for transfer to involuntary outpatient treatment over the objection of the department. The court, after review of the petition, may schedule a hearing pursuant to section 6403(c).

(5) An outpatient treatment plan shall be in writing and shall identify the specific entity that will provide each clinical and support service identified in the plan.

(6) The department shall provide a copy of the outpatient treatment plan to the court, the person, the attorney who represented the person at the most recent hearing pursuant to section 6403, the board, the district attorney, and the county solicitor or a designee.

42 Pa.C.S. § 6404(c) (emphasis added).

Also, the restrictions on discharge of an individual following involuntary treatment are set forth in Act 21 as follows:

(d) Prohibition on discharge. — The court shall not order discharge from involuntary treatment until the person has completed involuntary outpatient treatment pursuant to section 6404.2 (relating to duration of outpatient commitment and review).

42 Pa.C.S. § 6404(d).

Act 21 further provides for a transfer of an individual to involuntary outpatient treatment with the following provision:

Transfer to involuntary outpatient treatment.

The court may approve or disapprove an outpatient treatment plan. Upon approval of an outpatient treatment plan,

the court shall order transfer of the person to involuntary outpatient treatment pursuant to section 6404.2 (relating to duration of outpatient commitment and review).

42 Pa.C.S. § 6404.1.

With regard to involuntary outpatient treatment and subsequent review, the statute provides the following:

Duration of outpatient commitment and review.

(a)   Terms and conditions. — If a court has ordered the transfer of the person to involuntary outpatient treatment pursuant to section 6404.1 (relating to transfer to involuntary outpatient treatment), the court may in its discretion specify the terms and conditions of the outpatient commitment, including, but not limited to:

> (1)   Absolute compliance with the outpatient treatment plan.
> (2)   Restrictions and requirements regarding the location of the person's residence and the times the person must be physically present.
> (3)   Restrictions and requirements regarding areas the person is not permitted to visit.
> (4)   Restrictions and requirements regarding who the person may contact in any medium.
> (5)   Periodic polygraph tests.

(b)   Duration. — The court shall order involuntary outpatient treatment for a period of one year.

(c)   Status reports. — An involuntary outpatient treatment provider shall submit a report on the person's status and clinical progress, on a form prescribed by the department, to the facility operated by the department pursuant to section 6406(a) (relating to duty of Department of Public Welfare), not less than every 30 days.

(d)   Failure to comply. — If an involuntary outpatient treatment provider becomes aware that the person has violated any provision of the treatment plan or any term or condition specified pursuant to subsection (a), or the provider concludes

that the person is having serious difficulty controlling sexually violent behavior in an outpatient setting due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence, the provider shall immediately notify the facility operated by the department pursuant to section 6406(a). The facility shall notify the court by the close of the next business day.

(e) Revocation of transfer. — Upon receiving notice pursuant to subsection (d) that the person has violated a material term or condition of transfer specified pursuant to subsection (a), or that the person is having serious difficulty controlling sexually violent behavior in an outpatient setting due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence, the court shall revoke the transfer to involuntary outpatient treatment and order the immediate return to involuntary inpatient treatment without a prior hearing. The court may issue a warrant requiring any law enforcement officer or any person authorized by the court to take the person into custody and return the person to involuntary inpatient treatment. The person may file a written request for a hearing after revocation of the transfer to involuntary treatment. The court shall conduct a hearing pursuant to section 6403(c) (relating to court-ordered involuntary treatment) within ten days of filing of the request.

(f) Annual review and discharge.

(1) Sixty days prior to the expiration of the one-year outpatient commitment period, the director of the facility or a designee shall submit an evaluation, and the board shall submit an assessment of the person to the court.

(2) The court shall schedule a review hearing which shall be conducted pursuant to section 6403(c) and which shall be held no later than 30 days after receipt of both the evaluation and the assessment under paragraph (1). Notice of the review hearing shall be provided to the person, the attorney who represented the person at the previous hearing held pursuant to section 6403, the district attorney and the county solicitor or a designee. The person and the person's attorney shall also be provided with

written notice advising that the person has the right to counsel and that, if the person cannot afford one, counsel shall be appointed for the person. If the court determines by clear and convincing evidence that the person has serious difficulty controlling sexually violent behavior due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence, the court shall order an additional period of involuntary inpatient treatment of one year; otherwise the court shall order the discharge of the person and inform the person on the record and in open court of the person's obligation to attend counseling under subsection (g), including the penalty for failing to attend counseling under 18 Pa.C.S. § 4915.1 (relating to failure to comply with registration requirements). The order shall be in writing and shall be consistent with the protection of the public safety and appropriate control, care and treatment of the person. Upon discharge, the person shall attend counseling under subsection (g).

(g) Counseling of sexually violent delinquent children. — For the time period under section 9799.15 (relating to period of registration), a sexually violent delinquent child shall attend at least monthly counseling sessions in a program approved by the board and shall be financially responsible for all fees assessed from the counseling sessions. The board shall monitor compliance. If the sexually violent delinquent child can prove to the satisfaction of the court inability to afford to pay for the counseling sessions, the sexually violent delinquent child shall attend the counseling sessions; and the board shall pay the requisite fees.

42 Pa.C.S. § 6404.2 (emphases added).

We now turn to recently developed case law that informs our analysis in this matter, i.e, Muniz and Butler. We note that these cases addressed

the constitutionality of this Commonwealth's Sexual Offender Registration and Notification Act ("SORNA")[1] and not Act 21. However, historically, we have employed the same standards in reviewing issues under Act 21 as under the relevant adult sex offender statute. See In the Interest of K.A.P., 916 A.2d 1152, 1159 (Pa. Super. 2007) (stating "[j]ust like Megan's Law II, [Act 21] contains provisions where a trial court is asked to predict the likelihood that an offender will commit an act of sexual violence as a result of a personality disorder or mental abnormality. Thus, the cases interpreting Megan's Law II are highly instructive when interpreting [Act 21]"); In the Interest of R.Y., 957 A.2d 780, 784 (Pa. Super. 2008) (observing that, analytically, a claim challenging the sufficiency of the evidence under Act 21 is similar to a challenge to the sufficiency of the evidence that a defendant is a "sexually violent predator" under Megan's Law and adopting the same principles of appellate review for Act 21 purposes). Despite the lack of such analysis in In re H.R., ___ A.3d ___, 2018 PA Super 264 (Pa. Super. filed September 21, 2018), as discussed infra, we conclude that we are constrained by our prior determinations, which applied Megan's Law decisions to cases involving Act 21, to analyze

_____

[1] SORNA, 42 Pa.C.S. §§ 9799.10-9799.41, supplanted Megan's Law as the statute governing the registration and supervision of sex offenders. SORNA was recently amended by H.B. 631, 202 Gen. Assem., Reg. Sess. (Pa. 2018), Act 10 of 2018.

Act 21 in light of recent case law that addressed the constitutionality of SORNA.

In Muniz, the Pennsylvania Supreme Court held that the registration requirements set forth under SORNA constitute criminal punishment as opposed to a mere civil penalty, and therefore, their retroactive application violates the ex post facto clauses of the Pennsylvania Constitution. Muniz, 164 A.3d at 1193. Indeed, five of the six participating justices held that the registration provisions constitute punishment, notwithstanding the General Assembly's identification of the provisions as nonpunitive. Id. at 1218. In reaching its holding, the Court in Muniz applied a two-part analysis. Id. at 1208. The Court first addressed the stated intent of the General Assembly in effectuating the statute. Id. at 1209. The Court went on to determine whether the law was punitive in effect by conducting an analysis of the seven factors used to determine if a statute is punishment set forth in Kennedy v. Mendoza-Martinez, 372 U.S. 144 (1963). Accordingly, we will do likewise.

We observe that a panel of this Court recently decided the matter of In re H.R., ___ A.3d ___, 2018 PA Super 264 (Pa. Super. filed September 21, 2018), and concluded that Act 21 has a nonpunitive purpose and effect, such that it does not constitute punishment. In reaching its conclusion, the Court in H.R. relied upon our previous holding in In re S.A., 925 A.2d 838 (Pa. Super. 2007), wherein we determined that Act 21 is not penal in

- 20 -

nature. H.R., ___ A.3d at ___, 2018 PA Super 264 at *7. In so doing, the Court in H.R. declined to rely upon our Supreme Court's decision in Muniz and attempted to distinguish the ramifications of the decision therein. Id. at *8. Specifically, the Court in H.R. stated:

> [I]n In re S.A., this Court considered Act 21 in light of the [Mendoza–Martinez] factors, and concluded that Act 21 is not punitive in effect. Therefore, Muniz, which found that the ex post facto application of SORNA (a punitive statute) was prohibited, is distinguishable from this case that involves Act 21 (a non-punitive statute). Hence, [the a]ppellant's reliance on Muniz affords him no relief.

Id. (emphases in original). Likewise, the Court in H.R. distinguished this Court's holding in Butler on the presumption that Butler was decided based on the punitive effect of SORNA, and, pursuant to the holding in S.A., Act 21 is not punitive. Id. at *9. Finally, in reaching its conclusion that the 2011 amendments to Act 21 do not render the statute punitive in nature, the H.R. Court relied upon a discussion presented by the trial court and considered only isolated excerpts from the 2011 amendments. Id. at *9-12. In so doing, the H.R. Court did not conduct a full two-step analysis of the amended statute, as conducted in Muniz, to determine whether it must be deemed punitive in nature. We further note that the cases relied upon by the Court in H.R., for the blanket conclusion that Act 21 is nonpunitive, predate the 2011 amendments to Act 21. For this reason, we decline to follow the rudimentary reasoning set forth in H.R. and will conduct our own

two-step, Muniz-sanctioned analysis of Act 21 as it now stands with the 2011 amendments.

Our first inquiry involves a determination of the intent of the legislature. As the Court in Muniz explained:

> In applying the first element of this test, the sole question is whether the General Assembly's intent was to punish. This is a question of statutory construction and we must consider the statute's text and its structure to determine the legislative objective. Furthermore, considerable deference must be afforded to the intent as the legislature has stated it.

Muniz, 164 A.3d 1209 (citations and quotation marks omitted).

The General Assembly announced that Act 21 "establishes rights and procedures for the civil commitment of sexually violent delinquent children, who . . . pose a danger to the public and further provides for additional periods of commitment for involuntary treatment . . ." 42 Pa.C.S. § 6401. Nothing in this language reflects that the legislature intended the law to be punishment. Rather, the General Assembly's stated intent in enacting Act 21 was not to punish sexually violent delinquent children, but to establish civil commitment procedures to provide involuntary treatment and protect the public from danger. Therefore, because the intent of the legislation is nonpunitive, we address the second prong of our analysis, i.e., examination of the seven Mendoza-Martinez factors as approved in Muniz.

Specifically, our inquiry requires a determination as to whether the effects of Act 21 are sufficiently punitive to override the legislature's nonpunitive intent. To this end, in Mendoza–Martinez, 372 U.S. 144, the

United States Supreme Court mandated a seven-factor test. Specifically, courts must consider the following:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions.

Id. at 168–169.

The first factor addresses whether Act 21 involves an affirmative disability or restraint. The statute provides that the individual is subject to involuntary inpatient commitment for a period of one year. 42 Pa.C.S. § 6404(a). It also provides for an annual review, at which the court may "order an additional period of involuntary inpatient treatment for one year." 42 Pa.C.S. § 6404(b)(2). This type of involuntary inpatient treatment is permitted to extend indefinitely.

Furthermore, the 2011 amendments to Act 21 altered the ramification of the trial court's conclusion upon annual review. The statute formerly instructed that if the court determined that the person did not continue to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment due to a mental abnormality or personality disorder that made the person likely to engage in an act of sexual violence, the court shall order the discharge of the person. However, the 2011 amendments

removed the opportunity for immediate discharge and instructed that if the court determines that the person does not continue to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence, "the court shall order the department, in consultation with the board, to develop an outpatient treatment plan for the person." 42 Pa.C.S. § 6404(b)(2) (emphasis added). In addition, the 2011 amendment to Act 21 added the following restrictive language prohibiting discharge prior to completion of involuntary outpatient treatment:

> (d) Prohibition on discharge.-- The court shall not order discharge from involuntary treatment until the person has completed involuntary outpatient treatment pursuant to section 6404.2 (relating to duration of outpatient commitment and review).

42 Pa.C.S. § 6404(d).

Hence, we find the involuntary inpatient treatment, as well as the limitations on discharge set forth in the 2011 amendments, to be a direct restraint upon an individual. Accordingly, we consider this factor to weigh in favor of finding Act 21's effect to be punitive.

The second factor is whether the sanction has historically been regarded as punishment. We observe that the 2011 amendments to Act 21 added the entirety of Sections 6404.1 and 6404.2 to the Act. Upon review of those sections, we are constrained to conclude that they are akin to

- 24 -

probation. In reaching this conclusion, we reproduce the following language from our Supreme Court's decision in Muniz, which analyzed SORNA under the second factor and enlightens our analysis herein:

> In contrast, the mandatory in-person verification requirement in Section 9799.15(e) not only creates an affirmative restraint upon appellant, requiring him to appear at a designated facility a minimum of 100 times over the next 25 years, extending for the remainder of his life, as a Tier III offender, but also greatly resembles the periodic meetings with probation officers imposed on probationers. … Because SORNA differs significantly from the statute at issue in Smith[ v. Doe, 538 U.S. 84 (2003)], these disparities must be considered.
>
> In [Commonwealth v. Williams, 832 A.2d 962 (Pa. 2003)] Williams II, the Pennsylvania Supreme Court found that probation has historically been considered a traditional form of punishment. Williams II, 832 A.2d at 977. Probation entails a set of mandatory conditions imposed on an individual who has either been released after serving a prison sentence, or has been sentenced to probation in lieu of prison time. 42 Pa.C.S. § 9754. These conditions can include psychiatric treatment, limitations on travel, and notifying a probation officer when any change of employment or residency occurs. 42 Pa.C.S. § 9754(c). Probationers are also subject to incarceration for a violation of any condition of their probation. 42 Pa.C.S. § 9771.
>
> Like the conditions imposed on probationers, registrants under SORNA must notify the state police of a change in residence or employment. 42 Pa.C.S. § 9799.15(g). Offenders also face incarceration for any non-compliance with the registration requirements. 42 Pa.C.S. § 9799.22(a). Furthermore, SORNA requires registrants who do not have a fixed place of work to provide "general travel routes and general areas where the individual works" in order to be in compliance. 42 Pa.C.S. § 9799.16. The Supreme Court in Smith stated that "a sex offender who fails to comply with the reporting requirement may be subjected to criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense." Smith, 538 U.S. at 101-02. However, violations for noncompliance with both probation and SORNA registration requirements are procedurally parallel. Both

require further factual findings to determine whether a violation has actually occurred. 42 Pa.C.S. §§ 9771(d), 9799.21. Similarly, but for the original underlying offense, neither would be subject to the mandatory conditions from which the potential violation stems. The parallels between the SORNA registration requirements and probation lead me to conclude that factor two of the Mendoza-Martinez test leans towards a finding that SORNA is punitive.

Muniz, 164 A.3d at 1213 (quoting Commonwealth v. Perez, 97 A.3d 747, 763-764 (Pa. Super. 2014) (Donohue, J. concurring)).

Similar to the conditions imposed upon an individual who has either been released after serving a prison sentence or has been sentenced to probation in lieu of prison time, Act 21 permits the court to specify terms and conditions of the involuntary outpatient commitment, including but not limited to:

(1) Absolute compliance with the outpatient treatment plan.
(2) Restrictions and requirements regarding the location of the person's residence and the times the person must be physically present.
(3) Restrictions and requirements regarding areas the person is not permitted to visit.
(4) Restrictions and requirements regarding who the person may contact in any medium.
(5) Periodic polygraph tests.

42 Pa.C.S. § 6404.2(a). Further, the statute mandates that if a person violates a material term or condition specified in Section 6404.2(a), "the court shall revoke the transfer to involuntary outpatient treatment and order the immediate return to involuntary inpatient treatment without a prior hearing." 42 Pa.C.S. § 6404.2(e). An addition to the penal nature of the statute is the language directing that "[t]he court may issue a warrant

requiring any law enforcement officer or any person authorized by the court to take the person into custody and return the person to involuntary inpatient treatment." Id.

Upon review of these provisions of Act 21 pertaining to involuntary outpatient treatment, we conclude that they are similar to probation. Therefore, this factor of the analysis, as well, weighs in favor of a determination that Act 21's effect is punitive.

The third factor concerns whether the statute at issue applies only upon a finding of scienter. With regard to this factor, Appellant notes that the Court in Muniz determined that this factor was of little significance and concedes that it is not relevant to our analysis. Appellant's Brief at 10. The Commonwealth agrees. Commonwealth's Brief at 12. We follow the conclusion of the Court in Muniz and consider this factor to be of little significance in our inquiry. Muniz, 164 A.3d at 1214.

The fourth factor concerns whether the operation of the statute promotes the traditional aims of punishment, i.e., retribution and deterrence. Act 21 does not have an effect of retribution. In S.A., the Court addressed the deterrent effect of the statute as follows: "[A]lthough the legislation could possibly deter behavior of delinquent juveniles, the presence of a deterrent purpose does not render such legislation punitive in nature." S.A., 925 A.2d at 844. However, as we noted earlier, the S.A. Court's conclusion was based upon the previous version of Act 21.

For the following reasons, when we review the current iteration of Act 21, we cannot reach the same conclusion as the Court in S.A. with regard to deterrence. Specifically, we observe that the previous version of Section 6404 of the statute, which was reviewed by the Court in S.A., permitted the court to "discharge" the individual from involuntary inpatient treatment at the conclusion of an annual review period, or upon petition of the director of the facility in which the individual is committed. Currently, Act 21 does not permit discharge of an individual from involuntary inpatient treatment, but instead directs that an outpatient treatment plan be formulated. In fact, Act 21 now contains the following language prohibiting discharge:

> The court shall not order discharge from involuntary treatment until the person has completed involuntary outpatient treatment pursuant to section 6404.2 (relating to duration of outpatient commitment and review).

42 Pa.C.S. § 6404(d) (emphasis added). Furthermore, the current version of Act 21 includes additional language pertaining to transfer of an individual to involuntary outpatient treatment, 42 Pa.C.S. § 6404.1, and a section detailing the duration of outpatient treatment and review, 42 Pa.C.S. § 6404.2. Adding to the deterrent effect, Act 21 currently includes provisions that permit the individual to be transferred immediately from involuntary outpatient treatment back to involuntary inpatient treatment. 42 Pa.C.S. § 6404.2(e). The 2011 amendments direct that a review hearing be held at the conclusion of one year of involuntary outpatient treatment. 42 Pa.C.S. § 6404.2(f). Following the review hearing:

> the court shall order an additional period of involuntary inpatient treatment of one year; otherwise the court shall order the discharge of the person and inform the person on the record and in open court of the person's obligation to attend counseling under subsection (g), including the penalty for failing to attend counseling under 18 Pa.C.S. Section 4915.1 (relating to failure to comply with registration requirements).

42 Pa.C.S. § 6404.2(f). Thus, the individual can be cycled from involuntary outpatient treatment back into involuntary inpatient treatment to begin the entire process anew.

Moreover, as reflected in the language cited above, the 2011 amendments to Act 21 added the additional requirement that, upon eventual discharge, the individual attend at least monthly counseling sessions in an approved program and shall be financially responsible for all fees from the counseling sessions. 42 Pa.C.S. § 6404.2(g). The counseling requirement is equal to the length of the individual's SORNA registration. Id. Currently, under SORNA, a sexually violent delinquent child must register for life. 42 Pa.C.S. § 9799.15(a)(5). Therefore, the mandatory counseling requirement under 42 Pa.C.S. § 6404.2(g), and the concomitant responsibility to pay for such counseling sessions, continues for the individual's lifetime. Analyzing the statute as a whole, we are compelled to conclude that its provisions were designed with a deterrent effect. Accordingly, this factor weighs in favor of finding Act 21 to be punitive.

We turn to the fifth factor, which concerns whether the behavior to which the statute applies is already a crime. With regard to this factor,

Appellant agrees with the Muniz Court, which determined that the factor was of little weight because past criminal conduct is a necessary beginning point. Appellant's Brief at 11. Again, we follow the conclusion of the Court in Muniz and consider this factor to be of little significance in our inquiry. Muniz, 164 A.3d at 1216.

The sixth factor compels us to address whether there is an alternative purpose to which Act 21 may be rationally connected. Here, Appellant concedes that Act 21 is rationally related to public safety and health. We agree that there is an alternative purpose to which the statute may be rationally connected. Consequently, we conclude that this factor weighs in favor of finding Act 21 to be nonpunitive.

Finally, the seventh factor directs us to consider whether the statute is excessive in relation to the alternative purpose assigned. There is no doubt that once a person is subject to the provisions of Act 21, such subordination continues indefinitely. The statutory process begins when the court mandates involuntary inpatient treatment, which is subject to an annual review hearing. At the end of the review hearing, the court must either (1) recommit the person for another one-year term of involuntary inpatient treatment, or (2) transfer the person to involuntary outpatient treatment for a term of one year. If the court recommits the person for further inpatient treatment, the cycle of recommitment and review may continue indefinitely. Eventually, if the court is satisfied that the person no longer has serious

difficulty in controlling sexually violent behavior in an inpatient setting, the individual is not discharged but is transferred to involuntary outpatient treatment. The period of involuntary outpatient treatment also is for one year, with a review hearing at the conclusion of that period. At the conclusion of that review hearing, the court shall either (1) "discharge" the person or (2) transfer the individual back to involuntary inpatient treatment to begin the entire sequence anew. However, in this instance the term "discharge" is a misnomer because the person is never unconstrained of the mandatory monthly counseling provision with its associated cost that follows the completion of involuntary outpatient treatment. Moreover, failure to attend the mandatory counseling sessions constitutes a criminal offense. 18 Pa.C.S. § 4915.1(a.2). Said crime is currently graded as a misdemeanor of the first degree. 18 Pa.C.S. § 4915.1(c.3). We conclude that the sweeping nature of Act 21, which subjects the individual to lifetime control by the state for acts that occurred when the person was a juvenile, is excessive in relation to the statute's alternative purpose of protecting the public. Consequently, this factor weighs in favor of finding Act 21 to be punitive.

We also must balance the above-discussed factors. Our review of Act 21 under the Mendoza-Martinez factors reveals significant differences between the most recent iteration of the statute following the 2011 amendments and the statute that was determined to be nonpunitive in S.A., 925 A.2d at 845. We now hold that four of the five factors, which we have

given significance, weigh in favor of finding Act 21 to be punitive in effect despite its remedial purpose. In summary, we have concluded that Act 21 involves affirmative disabilities or restraints; its sanctions have been historically regarded as punishment; its operation promotes the traditional aims of punishment; and its lifelong provisions are excessive in relation to its stated nonpunitive purpose. Accordingly, we find that application of Act 21 constitutes punishment.

We also must consider Appellant's claim that the provisions of Act 21 are unconstitutional as written because they amount to the imposition of punishment. Appellant's Supplemental Brief at 12. Specifically, Appellant notes that the statute employs an incorrect burden of proof in determining whether to apply its provisions to individuals. Id. We agree.

In addressing this portion of Appellant's argument, we consider the following language from Butler:

> In Apprendi [v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)], the Supreme Court of the United States held that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. Stated another way, it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.
>
> Subsequently in Alleyne v. United States, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), the [Supreme Court of the United States] held that any fact that increases the mandatory minimum sentence for a crime is an element that

must be submitted to the jury and found beyond a reasonable doubt. The Alleyne majority reasoned that while Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), limited Apprendi to facts increasing the statutory maximum, the principle applied in Apprendi applies with equal force to facts increasing the mandatory minimum. This is because it is impossible to dissociate the floor of a sentencing range from the penalty affixed to the crime, and it is impossible to dispute that facts increasing the legally prescribed floor aggravate the punishment. Thus, this reality demonstrates that the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime, each element of which must be submitted to the jury.

Butler, 173 A.3d at 1216-1217 (quoting Commonwealth v. Conaway, 105 A.3d 755, 761 (Pa. Super. 2014)). This Court further explained:

Apprendi and Alleyne apply to all types of punishment, not just imprisonment. Thus, as our Supreme Court has stated [in Muniz], if registration requirements [under SORNA] are punishment, then the facts leading to registration requirements need to be found by the fact-finder chosen by the defendant, be it a judge or a jury, beyond a reasonable doubt.

Butler, 173 A.3d at 1217 (citations omitted). The Butler Court went on to clarify the following:

[S]ince our Supreme Court has held that SORNA registration requirements are punitive or a criminal penalty to which individuals are exposed, then under Apprendi and Alleyne, a factual finding, such as whether a defendant has a "mental abnormality or personality disorder that makes [him or her] likely to engage in predatory sexually violent offenses[,]" 42 Pa.C.S.A. § 9799.12, that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder. Section 9799.24(e)(3) [of SORNA] identifies the trial court as the finder of fact in all instances and specifies clear and convincing evidence as the burden of proof required to designate a convicted defendant as an SVP. Such a statutory scheme in the criminal context cannot withstand constitutional scrutiny. Accordingly, we are constrained to hold that section 9799.24(e)(3) is unconstitutional and [the a]ppellant's judgment

of sentence, to the extent it required him to register as an SVP
for life, was illegal.

Id. at 1217-1218 (emphasis added).

We are constrained to reach the same conclusion as the Court in Butler. As discussed above, we have determined that the provisions of Act 21 are punitive. Therefore, pursuant to Apprendi and Alleyne, a factual finding of whether an individual has serious difficulty controlling sexually violent behavior due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence, which exposes the individual to punishment, must be found beyond a reasonable doubt by the chosen fact finder. However, Act 21 names the trial court as the finder of fact and sets forth "clear and convincing evidence" as the required burden of proof. Accordingly, this statutory procedure does not withstand constitutional scrutiny. Hence, it is our determination that Act 21 is unconstitutional for the above-stated reasons, and we are constrained to vacate the order directing Appellant to be subjected to the constraints of the statute.

Order vacated. Jurisdiction relinquished.

P.J.E. Bender joins the Opinion.

Judge Strassburger files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  12/10/2018