957 A.2d 780 (2008)
In the Interest of R.Y., JR.
Appeal of R.Y., Jr.
No. 3415 EDA 2007
Superior Court of Pennsylvania.
September 29, 2008.
*781 Steven E. Burlein, Honesdale, for appellant.
Shelly J. Catina, Asst. Dist. Atty., Honesdale, for the Com., Participating Party.
Alfred G. Howell, Honesdale, for Wayne County, Participating Party.
BEFORE: LALLY-GREEN, KLEIN, and GANTMAN, JJ.
OPINION BY LALLY-GREEN, J.:
¶ 1 Appellant, R.Y., Jr., appeals from the order entered on August 15, 2007, directing him to undergo immediate commitment to an involuntary inpatient treatment facility under Act 21, 42 Pa.C.S.A. § 6401 et seq. We affirm.
¶ 2 The procedural history of the case is as follows. In 1999, Appellant was adjudicated delinquent for involuntary deviate sexual intercourse. Since that time, Appellant has been placed in a series of treatment centers. In June 2006, he was referred to the Sexual Offenders Assessment Board (SOAB) for assessment. Dr. Veronique N. Valliere of the SOAB assessed Appellant on December 8, 2006. Dr. Valliere determined that Appellant had a "mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence." See 42 Pa.C.S.A. § 6403(a). Specifically, she diagnosed Appellant with antisocial personality disorder (sometimes called psychopathy) and paraphilia not otherwise specified to non-consent:
[Appellant] meets diagnostic criteria for Antisocial Personality Disorder. A personality disorder is a pervasive, persistent pattern of behavior that is highly resistant to change. Symptoms described in a personality disorder are characterological, or foundational aspects of the personality.

*782 Antisocial Personality Disorder is a personality disorder characterized by a pattern of behaviors that demonstrate a disregard for the rights of others and the rules of society. There is, in persons with this personality disorder, a long history (beginning prior to the age of 15) of criminal, aggressive, and defiant behaviors, that continue into adulthood. Some of the criteria Appellant meets are: history of repeated criminal behavior; aggressiveness and assaultiveness; pattern of irresponsibility toward obligations; lack of empathy; manipulativeness; and little understanding of or concern for the impact of his behavior on others.
Persons with these disorders have a very difficult time in treatment. Change is difficult for a number of reasons. First, the traits are characterological and difficult to change. Second, typically persons with personality disorders have little distress about their own behaviors and the impact of them, decreasing their internal motivation to change.
Antisocial personality disorder contributes greatly to the likelihood of violent recidivism. In and of itself, antisocial personality disorder does not necessarily contribute to the risk of recidivism and sexual violence. However, combined with a history of repeated sexual aggression, the traits associated with antisocial personality disorder do raise the risk of recidivism. Callousness, a lack of empathy, egocentricity, impulsivity, and aggression are all traits that make one likely to hurt others for one's own gratification.
[Appellant] meets diagnostic criteria for Paraphilia Not Otherwise Specified to Non-Consent. His sexual fantasies have persistently included force, manipulation, or other forms of non-consent. His arousal to degradation, pain, torture, and humiliation are of great concern. [Appellant] may be or has already developed an arousal to Sadism, sexual arousal to the pain and humiliation of others. [Appellant] repeated anal assaults of victims may pain or humiliation causing [sic], though these offenses happened when he was very young. This should be aggressively explored.
Dr. Valliere's Report at 11-12.
¶ 3 Thus, Dr. Valliere determined that Appellant was eligible for civil commitment under Act 21. After various preliminary Act 21 proceedings, the court held a civil commitment hearing on August 14, 2007. After the hearing, the court found by clear and convincing evidence that Appellant was eligible for treatment. The court ordered Appellant to be committed to an inpatient involuntary treatment facility. Docket Entry 12; Trial Court Order, 8/14/2007 (filed and served August 15, 2007).
¶ 4 On August 27, 2007, Appellant filed a motion for extension of time to file post-trial motions pursuant to Pa.R.C.P. 227.1. On August 29, 2007, the court granted an extension to August 31, 2007. On that date, Appellant filed a "motion to reconsider" the court's civil commitment order. The trial court issued a "statement of reasons" for its civil commitment order on September 10, 2007. On November 19, 2007, the court filed an order denying Appellant's motion for reconsideration. Appellant filed a notice of appeal on December 7, 2007.
¶ 5 Appellant raises one issue on appeal:
Whether the Lower Court erred in finding the Appellant, R.Y. Jr., to be a "sexually violent delinquent child" in need of involuntary civil commitment under Act 21; 42 Pa.C.S. Chapter 64?
*783 Appellant's Brief at 3.[1]
¶ 6 Initially, we note significant concerns over the timeliness of this appeal, and thus the jurisdiction of this Court to hear the merits of Appellant's claims. Generally,
[b]efore addressing the merits of Appellant's claims, we must address the timeliness of this appeal as it implicates our jurisdiction. Commonwealth v. Yarris, 557 Pa. 12, 731 A.2d 581, 587 (1999) (appellate courts may consider the issue of jurisdiction sua sponte). Jurisdiction is vested in the Superior Court upon the filing of a timely notice of appeal.
Commonwealth v. Nahavandian, 2008 PA Super 159, ¶ 7, 954 A.2d 625 (citation omitted). In Commonwealth v. Hawkins, 2008 Pa. Lexis 1292 (Pa. August 19, 2008), Justice Saylor issued a concurring opinion discussing the concept of "hypothetical jurisdiction," where a court proceeds to the merits rather than directly decide a complex jurisdictional matter:
This Court has not directly addressed whether Pennsylvania courts may forego the resolution of a complex jurisdictional matter in favor of a disposition based on the clear-cut merits of an underlying substantive issue. Traditionally, however, the federal courts could exercise such "hypothetical jurisdiction" pursuant to Norton v. Mathews, 427 U.S. 524, 532, 96 S.Ct. 2771, 2775, 49 L.Ed.2d 672 (1976) (permitting federal courts to "reserv[e] difficult questions ... of jurisdiction when the case alternatively could be resolved on the merits in favor of the same party"). This practice was significantly curtailed in Steel Company v. Citizens for a Better Environment, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), which held that, at least in the context of Article III jurisdictional questions, the exercise of such jurisdiction was improper. Notably, though, the Steel Company decision did not specifically preclude the application of "hypothetical jurisdiction" in cases that did not implicate Article III. As such, several intermediate federal courts have continued to exercise such jurisdiction in situations involving statutory, rather than constitutional, jurisdictional matters. In my view, this approach constitutes a reasonable means of insuring judicial economy in cases involving clearly meritless claims, and, furthermore, it comports with this Court's similar practice of permitting the resolution of waiver issues through reference to the merits of an underlying claim.
Id. at **26-27, n. 4 (Saylor, J. concurring) (some citations omitted).
¶ 7 In our view, this case is ideal for the exercise of hypothetical jurisdiction. Rather than decide the jurisdictional matter directly, we will simply set forth our jurisdictional concerns,[2] and proceed to *784 the merits. Appellant argues that the evidence was insufficient to establish that he has a "mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence." Analytically, this claim is similar to a challenge to the sufficiency of the evidence that a criminal defendant is a "sexually violent predator" under Megan's Law, 42 Pa.C.S.A. § 9791 et seq. See In re K.A.P. Jr., 916 A.2d 1152 (Pa.Super.2007) In Commonwealth v. Meals, 590 Pa. 110, 912 A.2d 213 (2006), our Supreme Court set forth the guiding principles for appellate review in such a case. We will adopt them for Act 21 purposes:
Questions of evidentiary sufficiency present questions of law; thus, our standard of review is de novo and our scope of review is plenary. In conducting sufficiency review, we must consider the evidence in the light most favorable to the Commonwealth, which prevailed upon the issue at trial....
The standard of proof governing the determination of SVP status, i.e., clear and convincing evidence, has been described as an intermediate test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt.... The clear and convincing standard requires evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.
Id. at 219 (citations, quotation marks, and brackets omitted).
¶ 8 Most importantly, Meals instructs that it is not this Court's function to re-weigh factors supporting an SVP determination against factors that do not support that determination. Id. at 220. Moreover, reviewing courts must not take a mechanistic, checklist-based approach to the trial court's determination that the subject has a mental disorder. In Meals, this Court reversed the trial court's SVP finding of pedophilia because we concluded that the expert focused only on the age of the victims. Our Supreme Court reversed this Court, with the following pointed observations:
The basis for the majority's dismissal of the expert's diagnosis is flawed as a matter of fact and as a matter of law. As a matter of fact, [SOAB expert Gregory Loop] cited to more than the age of the victims in support of his opinion that appellee was a pedophile; he stressed also that multiple child victims were involved and that the offenses were committed *785 over a period of time. The facts fully supported these points.
The majority's discounting of the finding of pedophilia is also troubling because it ignores that Loop's expert opinion-that, to a reasonable degree of professional certainty, appellee was a pedophile-itself was evidence. To the extent appellee felt that the expert's "diagnosis" was not fully explained, did not square with accepted analyses of the disorder, or was simply erroneous, he certainly was free to introduce evidence to that effect and/or to argue to the factfinder that the Commonwealth's expert's conclusions should be discounted or ignored. But that argument would affect the weight, and not the sufficiency, of the expert's evidence.
Id. at 223-224. Finally, the Court suggested that an offender may meet the SVP criteria even if he does not necessarily meet all of the specific or technical criteria of the "DSM-4" (Diagnostic and Statistical Manual of Mental Disorders, 4th Edition). Id. at 225 (noting that the issue was not squarely before the Court.).
¶ 9 We now turn to Appellant's argument, which has several sub-parts. First, he suggests that the definitions of "mental abnormality" and "personality disorder" are unconstitutionally vague. Appellant's Brief at 17-18. We addressed and rejected this concern in prior cases. K.A.P. Jr., 916 A.2d at 1159 (language of Act 21 is "no more vague" than language which has been upheld in Megan's Law, including phrases such as "sexually violent predator," "personality disorder," "mental abnormality," "predatory," and "likely"); S.A., 925 A.2d at 847 (same).
¶ 10 Next, Appellant argues that "Dr. Valliere incorrectly diagnosed the Appellant with Paraphilia NOSnonconsent." Appellant's Brief at 18. Appellant argues that it was impossible to diagnose him with this disorder because according to the DSM, the offender must be 16 or older at the time of the offense and the victim must be at least five years younger. Appellant notes that at the time of Appellant's offense, he was 12 and his victim was eight. Appellant's Brief at 19.
¶ 11 Under the principles announced in Meals, we reject this argument. The presence or absence of one particular technical factor from the DSM will not defeat a finding that the offender is subject to Act 21. Moreover, Appellant's argument overlooks the fact that in the years since his juvenile offense, Appellant has been placed in highly structured environments, where the opportunity for re-offending is minimized. Most importantly, Appellant entirely ignores the psychological basis for Dr. Valliere's finding: namely, that Appellant is aroused to sexual behaviors and stimuli involving humiliation, force, torture, and coercion. Appellant does not attempt to rebut the overwhelming evidence in favor of this finding. Taking the Commonwealth's evidence as a whole, the trial court did not err in finding clear and convincing evidence of this mental disorder.
¶ 12 Next, Appellant argues that it was "impossible" to diagnose Appellant with antisocial personality disorder, because he was not diagnosed with a conduct disorder before age 15, as required by the DSM. Appellant's Brief at 22-23. This argument fails for the same reasons set forth above.[3] Reviewing the evidence in the light most *786 favorable to the Commonwealth, the record again overwhelmingly reflects support for the trial court's finding that Appellant has antisocial personality disorder.
¶ 13 Next, Appellant argues that the Commonwealth did not pose any risk of future dangerousness. Appellant notes that he has not committed a sexual offense since the underlying offense in 1999. Appellant also argues that the Commonwealth did not present a sufficient nexus between his personality disorder and any serious difficulty in controlling sexually violent behavior.
¶ 14 This argument again misses the mark. The record reflects that since 1999, Appellant has been placed in various restrictive environments where the likelihood of re-offending is significantly lessened. Moreover, Dr. Valliere found that when Appellant displays enough outward signs of progress to be placed in a less restrictive environment, he quickly acts out and re-offends in violent and/or sexual ways:
[Appellant] has a long history of sexual offending and a highly varied victim pool. He is willing to transcend age barriers, gender lines, and even relationship lines to get his sexual gratification. [Appellant] has engaged in ongoing offense dynamics even while proclaiming he has no "hands on" offenses for 3 years. He has manipulated others while voyeuring their deviant fantasies, having them write "pornography" or describe things to which they have been aroused. He exploited the therapeutic staff. He engaged in rape behavior by standing over and physically intimidating a female staff, demanding that she tell him about her fear. So, while he stated that he has not had sexual offenses, this examiner finds clear evidence that he is not controlling his deviant arousal patterns and is engaging in interpersonal behavior that directly replicates offense behavior. He pursues his paraphilic interests in pregnant women, humiliation, and others through pornography.
Dr. Valliere's Report at 13. Moreover, Dr. Valliere's report indicates that Appellant's combination of antisocial personality disorder and paraphilia-NOS to non-consent gives Appellant serious difficulty in controlling his sexually violent behavior. In short, the record reflects that Appellant's disorders make him highly likely to commit acts of sexual violence if given the opportunity. After reviewing the Commonwealth's evidence as a whole, we again readily conclude that the trial court did not err in finding clear and convincing evidence that Appellant is subject to Act 21. Appellant's final claim fails.
¶ 15 Order affirmed.
NOTES
[1] On January 3, 2008, the trial court directed Appellant to file a concise statement of errors complained of on appeal under Pa.R.A.P. 1925. Appellant filed a timely concise statement on the next day, raising the issue that he now raises on appeal. The trial court did not issue a Rule 1925 opinion.
[2] Ordinarily, the notice of appeal must be filed within 30 days of the appealable order. Pa.R.A.P. 903. Here, the trial court's commitment order was entered on August 15, 2007. Appellant filed a notice of appeal on December 7, 2007, more than 30 days thereafter. Thus, the notice of appeal is untimely and the appeal should be quashed unless we determine that Appellant's "motion for reconsideration" tolled the appeal period.

Act 21 itself does not expressly provide for "post-commitment motion" practice. Moreover, we see no basis in our procedural rules, statutes, or case law for applying civil post-trial motion practice (Pa.R.C.P. 227.1) or criminal post-sentence motion practice (Pa. R.Crim.P. 720) to Act 21 proceedings. On the other hand, new Rule 520 of the Pennsylvania Rules of Juvenile Court Procedure provides for "post-dispositional motions" following a delinquency proceeding under the Juvenile Act, 42 Pa.C.S.A. § 6301 et seq. See Pa. R.J.C.P. 100, 520, and official comment thereto. An Act 21 order is similar to an order of disposition because they both place the juvenile in a treatment facility after a declaration that the juvenile is in need of rehabilitation. Moreover, Act 21 proceedings are an extension of delinquency proceedings. See K.A.P., 916 A.2d at 1157-1158. Thus, we see a strong argument that the post-adjudication proceedings in Rule 520 should apply to Act 21 proceedings as well. We urge our Supreme Court to address this matter directly.
Assuming that Rule 520 applies, the appeal would be timely. Under Pa.R.J.C.P. 520(B)(1), post-dispositional motions are optional, but if they are filed, they must be filed within ten days. Here, Appellant timely asked for, and received, an extension of time to file his motion. He filed his motion within the time period allotted by the court. Next, Rule 520(B)(2)(a) provides that if a timely post-dispositional motion is filed, then the notice of appeal shall be filed within 30 days of the order disposing of the motion. Appellant did so in this case.
[3] Appellant also suggests that a finding of antisocial personality disorder is insufficient, by itself, to support an Act 21 order. We need not address this argument directly, because as noted above the trial court properly found that Appellant had both antisocial personality disorder and paraphiliaNOS to non-consent.