J-A09020-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1369 WDA 2024 |

Appeal from the Order Entered October 30, 2024
In the Court of Common Pleas of Allegheny County Family Court at
No(s): CP-02-DP-0000662-2022,
FID:02-FN-000749-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: K.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1373 WDA 2024 |

Appeal from the Order Entered October 30, 2024
In the Court of Common Pleas of Allegheny County Family Court at
No(s): CP-02-DP-0000204-2022

BEFORE: KUNSELMAN, J., NICHOLS, J., and LANE, J.

MEMORANDUM BY NICHOLS, J.:          **FILED: SEPTEMBER 30, 2025**

R.S. (Father)[1] appeals from the orders changing the permanency goals of his children K.S. (born in September of 2021) and A.S. (born in October of 2022) (collectively, Children) from reunification to subsidized permanent legal custody (SPLC). Father argues that the dependency court erred by refusing

---

[1] B.A. (Mother) is not a party to this appeal.

to permit unsupervised visits between Father and Children. Father also contends that the dependency court erred by ordering Father to complete permanency plan goals that were vague, unnecessary, overly burdensome, punitive, and/or served no purpose. Father additionally claims that the dependency court erred by refusing to find that the Allegheny County Office of Children, Youth and Families (CYF) failed to make reasonable efforts to assist Father in achieving his permanency plan goals. Lastly, Father argues that the dependency court abused its discretion by granting SPLC to Children's paternal grandfather. We affirm.

The dependency court summarized the factual and procedural history of this matter as follows:

> [K.S.] was born September **, 2021. He was adjudicated dependent by this court on April 20, 2022. [A.S.] was born October **, 2022. She was adjudicated dependent by this court on November 9, 2022. Pursuant to 42 Pa.C.S. § 6302(1), both Mother and Father, stipulated to unexplained injuries to [K.S.] This court heard testimony regarding allegations that at 6 months old, [K.S.] presented with a fracture of his left humerus and the physician later discovered healing fractures of his right first rib, left sixth rib, left seventh rib and five vertebrae. At that time his only caregivers were his Mother and Father. Both Mother and Father underwent CYF investigations and the results were unfounded for [] Parents. However, a second Childline [report] as to Father was indicated. Additionally, there is an indicated Childline [report] on an [] unknown person. This court heard testimony regarding drug and alcohol issues and a conviction for the criminal charges of endangering the welfare of children [(EWOC)[2]] regarding Mother . . . . The [dependency] court also heard testimony regarding anger issues and a conviction for the

---

[2] 18 Pa.C.S. § 4303(a)(1).

criminal charge of endangering the welfare of children regarding Father[3] . . . . The criminal court had issued a no contact order between the Mother and [K.S.] and also between Father and [K.S.] until 2028.[4] However, this criminal court order has been modified to allow [] Parents to have CYF [] supervised visits with [] Children. Both Mother and Father have completed certain types of treatment programs, such as anger management, and parenting, but the discussion as to what happened with [K.S.] and what the triggers were are not known and have not been addressed. Both parents currently have supervised visitation with [] Children. Both parents visit twice per week for half a day each.

[] Children have been in placement with Father's step-father [(Paternal Grandfather)], since October 23, 2022 for [K.S.] and July 15, 2022 for [A.S.]. [K.S.] was adjudicated dependent by this court on April 20, 2022. [A.S.] was adjudicated dependent by this court on November 9, 2022.

Dependency Ct. Op., 11/11/24, at 2-3 (some formatting altered).

On September 12, 2023, the dependency court entered a permanency review order indicating that Father was having coached visitation with Children twice per week and stating that if CYF "is unable to assure visits at least [twice] per week, a finding of no reasonable efforts will be made." Permanency Review Order, Docket No. 204-2022, 9/12/23, at 2-3. The dependency court also ordered that Parents undergo individual forensic

---

[3] Specifically, Father pled guilty to EWOC, graded as a felony and the criminal court sentenced Father to five years of probation. *See* Permanency Review Order, Docket No. 204-2022, 9/12/23, at 2; N.T., 5/22/53, at 53, 79.

[4] The criminal court ordered that as a condition of Father's probation, Father was to have no contact with Children except for visitation supervised by CYF. *See* N.T., 1/31/24, at 50-51, 78; N.T., 5/22/53, at 38-39, 53; N.T., 9/25/24, at 94-95; N.T., 10/30/24, at 152.

evaluations and interactional evaluations with Terry O'Hara, Ph.D.[5]  *Id.* at 3.

The dependency court held a permanency review hearing on January 31, 2024.  At that hearing, Dr. O'Hara recommended, among other things, that Father engage in parent child interactive therapy (PCIT), additional anger management, and blended case management.  *See* N.T., 1/31/24, at 17-18, 26.  Dr. O'Hara also requested that he be provided with any police reports reflecting potential violence between Mother and Father to determine the extent of any potential inter-partner violence (IPV) involving this family.  *See id.* at 18.  Dr. O'Hara further concluded that there were "unknown risk factors" involved in this case because Father's explanation of how he injured K.S.'s arm did not explain the severity of K.S.'s overall injuries.  *See id.* at 31-40.

CYF caseworker Kellie Pavilonis testified that CYF was willing to make a referral for parents to start PCIT.  *See id.* at 63-64.  Ms. Pavilonis explained that CYF has had difficulties with transporting Children to and from supervised visitation with Parents because of the distance between Parents' residence and Paternal Grandfather's residence.  *See id.* at 52-57.  Children had arrived late to supervised visits with Parents and some visits were cancelled because Children would not have arrived on time.  *See id.* at 54-55, 64-65; *see also id.* at 71-72 (reflecting that Kasey Toomey, a visitation specialist at the

---

[5] Throughout his initial and reply brief, Father spells Dr. O'Hara's name as "Ohara."  The correct spelling appears to be "O'Hara."  *See* N.T., 9/25/24, at 5.

Children's Institute, also testified about transportation difficulties resulting in cancellation of Children's supervised visits with Parents).

On February 8, 2024,[6] the dependency court entered an order directing Father to complete a mental health evaluation and follow any and all of its recommendations, continue with anger management treatment, engage with PCIT, and follow all of Dr. O'Hara's recommendations. **See** Permanency Review Order, Docket No. 204-2022, 2/8/24, at 2-3.

At the May 22, 2024 permanency review hearing, Ms. Pavilonis testified that Paternal Grandfather and Children would be moving from a one-bedroom apartment into a four-bedroom home the following day. **See** N.T., 5/22/24, at 5; **see also** N.T., 1/31/24, at, 58-59. Ms. Pavilonis opined that a change of placement "would be detrimental since [] Children have been placed with Paternal Grandfather pretty much the entirety of this case. [C]hildren are doing very well in this care. They are thriving. . . They are very happy." N.T., 5/22/24, at 6 (some formatting altered); **see also id.** at 34. Ms. Pavilonis acknowledged that there were still issues with a "lack of transportation[]" for supervised visitation. **Id.** at 8; **see also id.** at 65, 70 (reflecting that Kendra Kirkland, a visitation specialist at the Children's Institute also testified that two of Children's supervised visits with Parents were cancelled because of transportation difficulties since she began supervising visitation). Ms.

_____

[6] The dependency court's order is dated January 31, 2024, but the dependency court notified the parties of the entry of its order on February 8, 2024. **See** Pa.R.A.P. 108(b); Pa.R.Civ.P. 236(b).

Pavilonis testified that CYF could not proceed with unsupervised visitation between Father and Children because Father's probation condition did not allow it. *See also id.* at 37, 40.

Ms. Pavilonis further explained that while CYF had made referrals for PCIT in the past, the referral process had changed, and it was Father's responsibility to contact a therapist who provided PCIT and to schedule an appointment. *See id.* at 19-20, 48-49. Father testified that prior to April of 2024, it was his understanding that CYF would make a referral for PCIT on his behalf. *See id.* at 90-91.

Maternal Grandmother testified that she is an approved foster parent and that her home is an available placement option for Children. *See id.* at 73-76. Father testified that he believed that placing Children with Maternal Grandparents was in Children's best interest. *See id.* at 92-96. Father also explained that at that time, he and Paternal Grandfather did not have a relationship, and Paternal Grandfather did not communicate with him about Children. *See id.* at 92, 97, 101.

At the conclusion of the May 22, 2024 hearing, Parents requested that the dependency court change Children's placement from Paternal Grandfather to Maternal Grandparents. *See id.* at 108-09, 113-15. Additionally, Father requested that the dependency court find that CYF had failed to provide reasonable efforts towards achieving Children's permanency goal of reunification because CYF was not willing to move towards unsupervised visitation and because of the ongoing transportation difficulties. *Id.* at 115-

17. The dependency court found that CYF had provided reasonable efforts and denied the request to change Children's placement. ***See id.*** at 122-27. Father's permanency plan goals remained in place. ***See*** Permanency Review Order, Docket No. 204-2022, 5/24/24, at 3.

On June 5, 2024, Father filed a motion for special relief requesting, among other things, that the dependency court cancel the upcoming goal change hearing, clarify Father's permanency plan goals, permit unsupervised visitation, change Children's placement from Paternal Grandfather to Maternal Grandparents, and find that CYF failed to make reasonable efforts to achieve reunification. ***See*** Father's Mot. for Special Relief, 6/5/24, at 7-23 (unpaginated); ***see also*** Father's Suppl. to Mot., 7/31/24, at 1-6 (unpaginated). The dependency court did not rule on Father's motion for special relief prior to the September 25, 2024 permanency review and goal change hearing.

Further, on August 23, 2024, CYF filed a motion to inform the dependency court, which alleged that Mother had been observed leaving Maternal Grandparents' residence on August 3, 2024, when Children were staying with Maternal Grandparents although Mother did not have supervised visitation. ***See*** CYF's Mot. to Inform, 8/3/24, at 1-2 (unpaginated). On August 29, 2024, the dependency court entered an order prohibiting Children from staying overnight with Maternal Grandparents. ***See*** Order, Docket No. DP-204-2022, 8/29/24.

At the September 25, 2024 hearing, Dr. O'Hara recommended that Father attend additional anger management training and for the treating clinician to be informed of Father's EWOC conviction. ***See*** N.T., 9/25/24, at 18-21. Dr. O'Hara explained that he was concerned about Parents having unsupervised contact with Children because K.S. had "sustained substantial acute and healing injuries[,]" which medical experts determined was physical child abuse and there were unknown risk factors in this case because there had been no explanation for how K.S. sustained those injuries. ***Id.*** at 18; ***see also id.*** at 48.

Ms. Pavilonis testified that Children are in daycare for up to eight hours per workday depending on Paternal Grandfather's work schedule. ***See id.*** at 101. Between September 7 to September 13, 2024, Children were placed in respite care with a foster parent who works with Paternal Grandfather while Paternal Grandfather went on vacation. ***See id.*** at 76-78, 101-03. During that time, the respite caregiver also dropped Children off at daycare. ***See id.*** at 103.

Ms. Pavilonis further explained that when Children arrived for supervised visitation on September 9, 2024, Parents contacted her claiming that Children were wearing the same clothes from their previous visit on September 5 and that Children smelled bad. ***See id.*** at 76. Further, Ms. Pavilonis indicated that A.S. "had what appeared to be significant rash and a goose egg on . . . the left side of her forehead." ***Id.*** According to Ms. Pavilonis, the respite caregiver stated that when she dropped Children off at the daycare earlier that

day, A.S. did have eczema but A.S. did not have a bruise on her head. ***See id.*** at 96-97. CYF's driver noticed that A.S. had a bruise on her head when he picked Children up from daycare. ***See id.*** After the end of the supervised visit, Ms. Pavilonis called the driver and directed the driver to go to the Children's Hospital. ***See id.*** at 77. There, a doctor diagnosed A.S. with an eczema outbreak and a CT scan was negative for any skull fractures or bleeding in her brain. ***See id.*** A.S. had already been treated for eczema in the past and the doctor prescribed more of the same cream to treat her flare-up. ***See id.*** A.S.'s eczema has since cleared up. ***See id.*** at 78. No reports of child abuse were filed against Paternal Grandfather or the respite caregiver. ***See id.*** at 77.

Further, Ms. Pavilonis testified that she is aware that Paternal Grandfather and Father have a strained relationship, and Paternal Grandfather has only sporadic communication with Mother. ***See id.*** at 98-99. Ms. Pavilonis stated that she believes that Paternal Grandfather and Parents could use a texting application to communicate and to share information about Children's medical appointments and that she would look for one to recommend to them. ***See id.*** at 100. The dependency court ordered that Father complete a new anger management course. ***See id.*** at 106. The dependency court continued the permanency review and goal change hearing to October 30, 2024.

The dependency court entered an order denying Father's June 5, 2024 motion for special relief on September 26, 2024.[7]  On October 10, 2024, Father filed a motion for recusal to supplement the record regarding several off-the-record discussions the dependency court had with counsel during the May 22, 2024 and September 25, 2024 hearings.  **See** Father's Mot. for Recusal and to Suppl. the Record, 10/10/24, at 10-13, 31-34 (unpaginated).  The dependency court denied Father's motion for recusal and to supplement the record on October 24, 2024.[8]

The dependency court resumed the permanency review and goal change hearing on October 30, 2024.  During that hearing, Ms. Pavilonis testified that communication between Paternal Grandfather and Parents had been an ongoing problem, and it had not improved between May and October.  **See** N.T., 10/30/24, at 39-41, 89, 93; **see also id.** at 123 (reflecting Mother's

---

[7] Father filed appeals from that order at each trial court docket number.  This Court quashed those appeals as interlocutory on November 15, 2024.  **See In re K.S.**, 1284 WDA 2024 (*per curiam* order); **In re A.S.**, 1299 WDA 2024 (*per curiam* order).

[8] We note that in the statement of the case portion of his brief, Father describes some of these off-the-record discussions between the dependency court and counsel at the September 25, 2024 hearing.  **See** Father's Brief at 20-25.  Father has not filed a statement in the absence of a transcript pursuant to Pa.R.A.P. 1923.  Therefore, this Court may not consider any of Father's representations regarding these off-the record discussions.  **See In re J.F.**, 27 A.3d 1017, 1023 n.10 (Pa. Super. 2011) (noting that this Court cannot consider items that do not appear in the certified record and that "[i]t is [the] appellant's responsibility to provide a complete certified record on appeal" (citation omitted and some formatting altered)).

testimony that Paternal Grandfather has not informed her about Children's medical appointments).

Ms. Pavilonis further testified that CYF did not have concerns about Children's safety while they have been placed with Paternal Grandfather, but she recommended a change in the daycare facility that Children attend because the daycare staff have not been able to explain how A.S. was injured there. **See id.** at 82, 87-89; **see also id.** at 120-22 (referencing Mother's testimony concerning the bump and bruise on A.S.'s head during the September 9, 2024 visitation). Lastly, Ms. Pavilonis testified that CYF had never considered adoption as a goal for Children. **See id.** at 87. At the conclusion of the hearing, the dependency court entered orders changing Children's permanency goals from reunification to SPLC.

Father timely appealed the goal change orders and simultaneously filed concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) on November 5, 2024. On November 18, 2024, Father filed an application to amend his concise statements. The following day, CYF filed an answer in opposition to Father's application to amend. The dependency court did not rule on Father's request for leave to amend his concise statements. Nevertheless, Father filed amended concise statements on November 21, 2024. The dependency court issued a Rule 1925(a) opinion explaining its decision to change Children's permanency goals to SPLC. **See** Dependency Ct. Op., 12/11/24.

On appeal, Father raises the following issues for review, which we restate as follows:

1. Did the dependency court abuse its discretion by refusing to permit unsupervised visits with the parents?

2. Did the dependency court abuse its discretion by refusing to change the placement of Children from Paternal Grandfather to Maternal Grandparents, which was contrary to the best interests of Children?

3. Did the dependency court abuse its discretion when it ordered goals that were vague, unnecessary, overly burdensome, punitive, and served no purpose other than to prevent and delay reunification?

4. Did the dependency court abuse its discretion by refusing to find that CYF failed to make reasonable efforts to assist Father achieve his goals?

5. Did the dependency court abuse its discretion when it denied the motion to cancel the goal change hearing, and when it granted the goal change to SPLC because closing the case with SPLC was not a better permanency option than reunification or changing placement of Children to Maternal Grandparents?

Father's Brief at 4.[9]

_____

[9] Father's statement of the questions involved consists of three questions. However, for the sake of clarity and the ease of analysis, we have separated Father's three questions into five distinct issues. *See* Pa.R.A.P. 2116 (requiring that "[t]he statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail"). Further, to the extent that Father argues that the dependency court abused its discretion by prohibiting overnight visits between Children and Maternal Grandparents between August 29, 2024 and October 30, 2024, that issue is waived because it is not fairly suggested by Father's statement of questions involved. *See id.*; *see also* *Boutte v. Seitchik*, 719 A.2d 319, 326 (Pa. Super. 1998) (stating that "issues that are not set forth in the statement of questions presented or reasonably suggested thereby are deemed waived").

**Waiver**

Before we address the merits of Father's issues, we must first determine if he has preserved his issues and properly developed them on appeal. This Court may raise this issue of waiver *sua sponte*. **See Tucker v. R.M. Tours**, 939 A.2d 343, 346 (Pa. Super. 2007). "The issue of waiver presents a question of law, and, as such, our standard of review is *de novo* and our scope of review is plenary." **Trigg v. Children's Hosp. of Pittsburgh of UPMC**, 229 A.3d 260, 269 (Pa. 2020) (citation omitted).

Issues that are not raised in an appellant's concise statement are waived on appeal. **See** Pa.R.A.P. 1925(b)(4)(vii) (providing that issues not included in a Rule 1925 concise statement are waived); **see also Dietrich v. Dietrich**, 923 A.2d 461, 463 (Pa. Super. 2007). Additionally, in a children's fast track appeal, "[t]he concise statement of errors complained of on appeal shall be filed and served with the notice of appeal" required by Rule 905. **See** Pa.R.A.P. 1925(a)(2)(i). However, this Court may decline to find waiver where the appellant in a child's fast track case files a late concise statement if the late filing did not prejudice the other parties. **See, e.g.**, **In re K.T.E.L.**, 983 A.2d 745, 747-48 (Pa. Super. 2009).

Further, this Court has explained that a subsequently filed amended or supplemental Rule 1925(b) statement will not preserve issues for appeal unless the party requests and receives leave of court to file that statement. **See C.L. v. M.P.**, 255 A.3d 514, 519 n.5 (Pa. Super. 2021) (*en banc*) (noting that the trial court granted the mother leave to amend her concise statement

and the trial court treated the amended concise statement as timely filed); *see also Commonwealth v. Jackson*, 900 A.2d 936, 939 (Pa. Super. 2006) (holding that issues raised in an appellant's untimely supplemental concise statements that were filed without leave of court were waived on appeal).

Additionally, it is well-established that "[t]he opportunity for, and the extent of, a reply brief is limited. . . . [A]n appellant is prohibited from raising new issues in a reply brief." *Commonwealth v. Fahy*, 737 A.2d 214, 219 n.8 (Pa. 1999) (citations omitted); *see also Reginelli v. Boggs*, 181 A.3d 293, 307 n.15 (Pa. 2018) (explaining that "an appellant is prohibited from raising new issues in a reply brief" (citation omitted)). "When an appellant uses a reply brief to raise new issues or remedy deficient discussions in an initial brief, the appellate court may suppress the non-complying portions." *Fahy*, 737 A.2d at 219 n.8 (citations omitted).

First, we note that Father raises several issues in his reply brief for the first time. These include his claims that CYF violated Father's right to due process by not calling the anger management clinician nor offering the anger management curriculum into evidence and that granting SPLC to Paternal Grandfather will effectively terminate Father's relationship with Children. Father's Reply Brief at 6-9, 11-16. Because Father did not raise these claims in his initial appellate brief, they are waived. *See Fahy*, 737 A.2d at 219 n.8; *see also Reginelli*, 181 A.3d at 307 n.15.

Next, as stated above, Father filed concise statements simultaneously with his notices of appeal. Father then filed an application to amend his

concise statements, which CYF opposed. The dependency court never ruled on Father's application. Therefore, any issues that Father has only raised in his amended concise statements are waived. **See C.L.**, 255 A.3d at 519 n.5; **see Jackson**, 900 A.2d at 939. However, because we conclude that the issues Father raised in his initial appellate brief are included within his initial Rule 1925 concise statements, we may address the merits of those issues.

### Visitation

In his first issue, Father argues that the dependency court erred by refusing Parents' request to have unsupervised visits with Children. Father's Brief at 32-48. Specifically, Father claims that "[t]hroughout this entire case, no witness with personal knowledge expressed any concern about [Father's] parenting skills or his interactions with his children during visits." **Id.** at 32 (citing N.T., 10/30/2024, at 44-45, 146-147). Father contends that Dr. O'Hara's opinion that Father presents a risk to Children is contradicted by the testimony of the visitation supervisors and is not supported by personal knowledge. **Id.** at 34-47. Father claims that Dr. O'Hara's recommendations "must be weighed against the uncontradicted testimony of multiple professionals," who supervised father's visitation with Children and their recommendation that Father be permitted to have unsupervised visitation with Children. Father's Reply Brief at 5-6. Father further argues that the dependency court committed legal error by relying on Father's purported refusal to admit that he had intentionally abused K.S. Father's Brief at 36

(citing *In re A.K.*, 906 A.2d 596, 601 (Pa. Super. 2006)); *see also* Father's

Reply Brief at 9-10.

This Court has explained that

the standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re L.V.*, 127 A.3d 831, 834 (Pa. Super. 2015) (citations omitted); *see also*

*In re L.T.*, 158 A.3d 1266, 1276 (Pa. Super. 2017) (explaining that "[t]o hold

that the trial court abused its discretion, we must determine its judgment was

manifestly unreasonable, that the court disregarded the law, or that its action

was a result of partiality, prejudice, bias or ill will" (citation omitted)).

Our Supreme Court has explained that

[appellate courts] are not in a position to make the close calls based on fact-specific determinations. Not only are our trial judges observing the parties during the hearing, but usually, as in this case, they have presided over several other hearings with the same parties and have a longitudinal understanding of the case and the best interests of the individual child involved. Thus, we must defer to the trial judges who see and hear the parties and can determine the credibility to be placed on each witness and, premised thereon, gauge the likelihood of the success of the current permanency plan. Even if an appellate court would have made a different conclusion based on the cold record, we are not in a position to reweigh the evidence and the credibility determinations of the trial court.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

In child dependency proceedings, the health and safety of the child "supersede[s] all other considerations." *In re R.P.*, 957 A.2d 1205, 1220 (Pa. Super. 2008).

In *A.K.*, the dependency court adjudicated two children dependent after the children were admitted to a hospital with "extensive bruising," "dried blood under [their] fingernails and toenails," and multiple fractures. *A.K.*, 906 A.2d at 598. "Both parents were eventually convicted of child endangerment charges in connection with these injuries[,]" and the criminal court imposed sentences of incarceration for both parents. *Id.* After a permanency hearing, the dependency court issued an order changing both children's permanency goals from reunification to adoption. *See id.* at 599. On appeal, this Court held that the dependency court "erred in assigning the parent[s'] failure to admit that they intentionally abused their children determinative weight[.]" *Id.* at 601.

Specifically, the *A.K.* Court explained that the parents "accepted responsibility for their actions or inactions by pleading guilty to the child endangerment charges." *Id.* at 600. In that case, the mother testified that while she initially believed the father's explanations for the children's injuries, with the benefit of hindsight she acknowledged that she should have taken the children to the hospital. *See id.* "Additionally, [the] mother testified that, if the children were returned to her, she would comply with any conditions that the agency would require, even ceasing contact with [the] father if need be." *Id.* (some formatting altered). Lastly, although the father in *A.K.*

- 17 -

continued to deny that he intentionally harmed the children (which the dependency court did not find to be credible), this Court observed that the father was not a continuing threat to the children because he was still serving his sentence of three to ten years of incarceration. *See id.*

Here, the dependency court explained its decision to deny Father's request for unsupervised visitation with Children as follows:

> [This decision] has nothing to do with across the street [*i.e.*, the criminal court]. But the order here is for the visits to be supervised. That's my court order. It remains in effect. I'm not concerned with everything that goes on over in criminal court. Not my issue.
>
> In regard to the motion to modify [Father's probation conditions] that, again, not my issue. Because even if it's nullified, we don't know if this court at this particular time is going to change the visits from being supervised anyway. So it could be unsupervised over there, it's still supervised here today. As my court orders have indicated it remains that way at this particular time.

N.T., 10/30/24, at 175-76.

Based on our review of the record, we discern no abuse of discretion by the dependency court. *See L.V.*, 127 A.3d at 834. Essentially, Father invites this Court to reweigh factual evidence presented at the permanency review hearings and to reweigh the credibility of witnesses, which this Court will not do. *See R.J.T.*, 9 A.3d at 1190. Further, we conclude that the facts of this case are distinguishable from those of *A.K.* In both *A.K.* and this case, the parents pled guilty to criminal charges related to their children's injuries. *See A.K.*, 906 A.2d at 600. However, the *A.K.* Court held that the father did not present an ongoing threat to the children because he was still incarcerated

- 18 -

and the mother testified that she was willing to cease contact with the father if the agency required that as a condition of reunification. *See id.* Here, Father received a sentence of probation, has regular supervised visitation with Children, and Mother and Father attend supervised visitation together. *See, e.g.*, N.T., 5/22/53, at 38-39; N.T., 10/30/24, at 96. Therefore, we conclude that the dependency court was permitted to consider Father's refusal to admit that he intentionally caused K.S.'s injuries in determining whether unsupervised visitation was in the best interests of Children. *See generally R.J.T.*, 9 A.3d at 1190. Therefore, Father is not entitled to relief on this claim.

**Change of Placement**

In his second issue, Father argues that the dependency court erred by refusing Parents' request to have Children's placement changed from Paternal Grandfather to Maternal Grandparents. Father's Brief at 48-62. Specifically, Father contends that it was not in Children's best interest for them to remain in placement with Paternal Grandfather because (1) Children have a two hour round trip twice per week between Paternal Grandfather's home and Parents' home for supervised visitation, (2) Children spend between thirty-two and forty hours per week in day care, and (3) Children were placed in respite care for a week when Paternal Grandfather was on vacation. *Id.* at 48-53, 56-58. Additionally, Father notes that on September 9, 2024, while Children were in respite care, Children arrived for supervised visitation wearing the same clothes they had been wearing several days earlier, Children smelled, and A.S. had both a head injury and an eczema flare up. *Id.* at 58-59. Father contends

that the only reasons CYF gave for opposing changing Children's placement from Paternal Grandfather to Maternal Grandparents was Father's criminal probation condition and the length of time Children had already been placed with Paternal Grandfather. *Id.* at 52.

Further, Father asserts that Paternal Grandfather refuses to communicate with Parents regarding Children, including about Children's medical appointments. *Id.* at 59-62. Particularly, Father claims that Paternal Grandfather failed to inform Father that Children had been taken to a hospital on September 9, 2024 in connection with the aforementioned head injury and eczema. *Id.* at 59-60.

Lastly, Father argues that Children should be placed with Maternal Grandparents because Maternal Grandmother is a certified foster parent and Children have a strong bond with Maternal Grandparents. *Id.* at 49-50, 54.

Before we address the merits of Father's issue, we must determine if he properly developed them for appellate review. *See Tucker*, 939 A.2d at 346 (explaining that this Court may raise this issue of waiver *sua sponte*). "It is well-settled that this Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority." *In re M.Z.T.M.W.*, 163 A.3d 462, 465 (Pa. Super. 2017) (citations omitted); *see also* Pa.R.A.P. 2119(a), (c) (providing that the argument section of an appellate brief shall contain discussion of issues raised therein and citation to pertinent legal authorities and references to the record). "Where an appellate brief fails to provide any discussion of a claim

with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." ***M.Z.T.M.W.***, 163 A.3d at 465-66 (citation omitted and formatting altered).

Here, Father has not cited any legal authority in support of his claim that Children's current placement with Paternal Grandfather is not in their best interest or that placing Children with Maternal Grandparents is in Children's best interests. Further, although Father argues that CYF's reliance on the length of time Children have been placed with Paternal Grandfather is not a sufficient reason to deny the requested change and maintain the current placement, Father has not cited any authority about what factors a court should or must consider when deciding a request to change a dependent child's placement. For these reasons, we conclude that Father has waived this issue. ***See M.Z.T.M.W.***, 163 A.3d at 465-66.

Even if Father had not waived this issue, we would conclude that Father is not entitled to relief. After a trial court has adjudicated a child dependent, it may "address custody issues and make a disposition of the case consistent with the best interests of the child." ***In re L.C., II***, 900 A.2d 378, 381 (Pa. Super. 2006) (citations omitted). Further, this Court has explained that "[w]hen a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved." ***In re K.C.***, 903 A.2d 12, 14-15 (Pa. Super. 2006) (citation omitted).

At the May 22, 2024 permanency review hearing, the dependency court explained that although there had been argument that Paternal Grandfather had not been caring for Children appropriately, the dependency court had not heard any evidence supporting those claims. *See* N.T., 5/22/24, at 122. The dependency court further explained that while there had been difficulties in ensuring that there was transportation for Children to attend supervised visitation with parents and issues that Children arrived for visitation periods, this was not a basis to alter Children's placement with Paternal Grandfather. *See id.* at 122-23.

Subsequently, at the October 30, 2024 goal change hearing, the dependency court ordered that Children were to remain in placement with Paternal Grandfather but ordered that he could not use the same daycare where Children had been injured. *See* N.T., 10/30/24, at 175-77.

Based on our review of the record, we discern no abuse of discretion by the dependency court. *See L.V.*, 127 A.3d at 834. Essentially, Father invites this Court to reweigh factual evidence presented at the permanency review hearings and to substitute our conclusion about which placement is in Children's best interest for that of the dependency court's, which this Court will not do. *See R.J.T.*, 9 A.3d at 1190. Therefore, even if Father had not waived this claim for lack of development, he would not be entitled to relief.

**Father's Permanency Plan Goals**

Next, Father argues that the dependency court abused its discretion in setting permanency plan goals that are vague, overly burdensome, and/or

punitive. Father's Brief at 62-77. First, Father argues that the dependency court erred by relying on Dr. O'Hara's recommendation that Father engage in parent child interactive therapy (PCIT) because PCIT is focused on helping parents learn how to address children's behavioral issues, which were not present in this case. *Id.* at 66-68. Next, Father contends that although he completed an anger management program in April of 2024 and CYF was satisfied that Father had completed that permanency plan goal, the dependency court ordered Father to complete an additional course of anger management based on Dr. O'Hara's recommendation. *Id.* at 68-69, 71. Father claims that this order lacks support in the record because Dr. O'Hara's conclusions are inconsistent with those of Ms. Pavilonis, the CYF caseworker. *Id.* at 69, 73. Next Father argues that Dr. O'Hara's recommendation that Father participate in blended case management also lacks support in the record. *Id.* at 73-75. Father further contends that he does not qualify for blended case management under Department of Human Services guidelines. *Id.* at 74-75. Lastly, Father argues that the goal of IPV counseling lacks support in the record and is not related to achieving the goal of reunification with Children. *Id.* at 76-77.

Here, Father has not cited any legal authority in support of his claim that the dependency court abused its discretion by ordering permanency plan goals other than boilerplate claims that the plan goals are vague, unnecessary, overly burdensome, punitive, and/or serve no purpose. Although Father has cited the Department of Human Services' blended case management

guidelines, he has not cited any legal authority to support his claims concerning the propriety of ordering blended case management and whether a parent fits the requirements. Additionally, Father has not cited any authority about what factors a court should or must consider when setting permanency plan goals for parents and the connection between those goals and achieving reunification between parents and their children. Nor has Appellant set forth how the dependency court abused its discretion in its decisions. For these reasons, we conclude that Father has waived these issues. *See M.Z.T.M.W.*, 163 A.3d at 465-66.

### CYF's Reasonable Efforts

Next, Father argues that the dependency court abused its discretion by refusing to find that CYF failed to provide reasonable efforts towards reunifying Children with Father. Father's Brief at 77-83. Specifically, Father contends that CYF failed to schedule both the initial and follow-up psychological evaluations and parent-child interactional evaluations within a reasonable time. *Id.* at 79-80, 82. Father also asserts that CYF was either dishonest or negligent in informing Father that CYF would make a referral for PCIT on Father's behalf only to later inform Father that CYF could not make that referral. *Id.* at 63-64. Further, Father claims that throughout this case, CYF failed to provide reasonable efforts because CYF failed to ensure Children were transported to and from Paternal Grandfathers' residence to Parents' residence for supervised visitation. *Id.* at 82-83.

At each permanency hearing, the trial court must determine "[w]hether reasonable efforts were made to finalize the permanency plan in effect." 42 Pa.C.S. § 6351(f)(5.1). This Court has observed that

> neither federal nor Pennsylvania law defines "reasonable efforts." Pennsylvania Court's Office of Child and Families in the Courts, *Pennsylvania Dependency Benchbook*, § 19.9.1, at 19-33 (2014). Notwithstanding the lack of a legal definition, we discern the following from prior cases. Because the focus of the Juvenile Act is on the dependent child, as opposed to parents, any services for parents must directly promote the best interests of the child. ***In re J.R.***, 875 A.2d [1111, 1118 (Pa. Super. 2005)]. "By requiring only 'reasonable efforts' to reunify a family, the statute recognizes that there are practical limitations to such efforts." ***Id.*** at 1118 n.5 (citing 4[2] Pa.C.S. §§ 6351(e) & (f)). "It is not sufficient for the court to find simply that an action will promote family reunification; the court must also determine whether the action constitutes a **reasonable** effort towards reunification." ***Id.*** (emphasis in original). This Court has stressed that the agency is not expected to do the impossible and is not a "guarantor of the success of the efforts to help parents assume their parental duties." ***In re A.L.D.***, 797 A.2d 326, 340 (Pa. Super. 2002) (citing ***In re J.W.***, 578 A.2d 952, 959 (Pa. Super. 1990)).

***In re C.K.***, 165 A.3d 935, 941-42 (Pa. Super. 2017) (footnotes omitted).

Here, the dependency court specifically concluded that CYF had made reasonable efforts with respect to transportation at the May 22, 2024 permanency review hearing. ***See*** N.T., 5/22/24, at 122. In reaching that conclusion, the dependency court explained:

> [W]e're living in a world today, [where] transportation is an issue, and it's not going to be something that's guaranteed. Never has been, never will be. That's not CYF's job. CYF's job is to basically try to do transportation, make sure visits occur, make up for visits with time, and time during the days and time as well, which they've been doing.

*Id.* at 123.

Based on our review of the record, we discern no abuse of discretion by the dependency court. *See L.V.*, 127 A.3d at 834. We agree with the dependency court that transportation cannot be guaranteed, and this Court has recognized that there are practical limitations to an agency's efforts. *See C.K.*, 165 A.3d at 941-42. We also discern no merit to Father's claim that CYF failed to provide reasonable efforts regarding scheduling evaluations for Children and providing Father with a referral for PCIT. Ms. Pavilonis, a CYF caseworker, testified that while CYF had made referrals for PCIT in the past, the referral process had changed, and it was Father's responsibility to contact a therapist who provided PCIT and to schedule an appointment. *See* N.T., 5/22/24, at 19-20, 48-49. As stated above, there are limitations to what an agency such as CYF can accomplish and it is not a guarantor of success. *See C.K.*, 165 A.3d at 941-42. Therefore, Father is not entitled to relief on his claim.[10]

_____

[10] We note that Father also argues that CYF failed to provide reasonable efforts because CYF did not provide Father with a copy of Dr. O'Hara's updated evaluation until the day before the September 25, 2024 hearing, which did not provide Father with sufficient time to address any of the concerns in that evaluation. Father's Brief at 81-82. Father did not request a continuance to have more time to review the report nor did Father object to its production on the eve of the hearing, therefore this issue is waived. *See In re S.C.B.*, 990 A.2d 762, 767 (Pa. Super. 2010) (explaining that a party must "must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process" to provide the trial court an opportunity to address the error).

**Goal Change**

Next, Father argues that the dependency court abused its discretion by changing Children's permanency goals from reunification to SPLC. Father's Brief at 84-86. Specifically, Father contends that "the record does not support the conclusion that reunification failed because of" Father. *Id.* at 85. Father claims that the dependency court and CYF failed to properly apply the Juvenile Act by deferring to the criminal court's probation order which restricted Father from having contact with Children except for visitation supervised by CYF. *Id.* at 85-86. Father asserts that this was error because that probation condition is illegal. *Id.* at 86.

Here, Father has not cited any legal authority in support of his claim that the goal change to SPLC was not in the best interests of Children. Nor has Father explained why the criminal court's probation order is illegal nor why the dependency court erred by deferring to that order. For these reasons, we conclude that Father has waived this issue. *See M.Z.T.M.W.*, 163 A.3d at 465-66.

Even if Father had not waived this issue, we would conclude that Father is not entitled to relief. Section 6351 of the Juvenile Act provides that at a permanency review hearing, the trial court can determine that placement with a guardian with permanent legal custody is appropriate in cases "where the return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child." 42 Pa.C.S. § 6351(f.1)(3). Therefore, "[i]n order for

the court to declare the custodian a 'permanent legal custodian[,]' the court must find that neither reunification nor adoption is best suited to the child's safety, protection[,] and physical, mental[,] and moral welfare." **In re S.H.**, 71 A.3d 973, 978 (Pa. Super. 2013) (citations omitted).

This Court has explained that "SPLC transfers permanent legal custody to the dependent child's legal custodian without requiring the termination of natural parental rights. When deemed appropriate, the trial court has the power to permit continued visitation by the dependent child's natural parents." **In re B.S.**, 861 A.2d 974, 977 (Pa. Super. 2004).

This Court has explained that "the concept of permanency means not leaving a child in foster care 'limbo' and instead ensuring the child lives in a 'permanent, safe, stable, and loving home[],' whether with the child's family or an 'alternative permanent family.'" **In re J.M.**, 219 A.3d 645, 657 n.11 (Pa. Super. 2019) (citations omitted); **see also In re Adoption of G.R.L.**, 26 A.3d 1124, 1127 (Pa. Super. 2011) (stating that the Juvenile Act's "goal of preserving the family unit cannot be elevated above all other factors when considering the best interests of children, but must be weighed in conjunction with other factors" (citation omitted)).

However, this Court has noted that "SPLC offer[s] less stability than adoption because parents may petition the court to attempt to re-gain custody at any time[.]" **In re Adoption of J.N.M.**, 177 A.3d 937, 946-47 n.9 (Pa. Super. 2018) (citation omitted); **see also S.H.**, 71 A.3d at 982 (explaining that a parent may petition the trial court "to regain custody of a child who is

the subject of an award of permanent legal custody"); *Pennsylvania Dependency Benchbook*, 3rd Ed. (2019), at § 12.4, p. 12-6 (stating that "[i]n the hierarchical scheme of permanency options, permanent legal custodianship is less desirable than reunification or adoption, but preferable to permanent relative placement and another planned permanent living arrangement" (citation omitted)).

Here, the dependency court explained:

In this case pursuant to a criminal court order, both Parents are not permitted to have custody of [] Children until at least 2028. Completely separate and apart from the criminal court order, this court has ordered that the goal has been changed from reunification to SPLC. Paternal Grandfather is available to provide appropriate care for [] Children and this also provides access for the parents in a supervised visitation situation. Additionally, the Maternal Grandparents are also available to visit with [] Children as often as they would request. During this time, each Parent is to continue to work on their parenting skills as well as their life skills as ordered by this court. All of this is in the best interests of [] Children. This court is acutely aware of the challenges faced by each Parent as they await the conclusions of their respective criminal cases while [] Children continue to progress and mature outside of [] Parents' home. This court believes that it is in the best interests of [] Children to remain in the care of [] Paternal Grandfather and still be able to spend necessary quality time with [] Parents through supervised visits. This court further believes that it is in the best interests of [] Children for [] Parents to continue to remain vigilant in honing their parenting skills while continuing to address their own issues of anger management, and drug and alcohol concerns.

It is evident to this court that the goal should be SPLC, and this would best meet the needs and welfare of [] Children by providing reliable consistent parenting in their young lives. For the reasons set forth in this opinion, the decision of this court should be affirmed.

Dependency Ct. Op., 11/11/24, at 5 (some formatting altered).

Based on our review of the record, we discern no abuse of discretion by the dependency court. *See L.V.*, 127 A.3d at 834. We agree with the dependency court that due to the criminal court's probation condition, Father is not able to have contact with Children outside of supervised visitation, and reunification is not best suited to the safety, protection and physical, mental and moral welfare of Children. *See* 42 Pa.C.S. § 6351(f.1)(3). Additionally, the CYF caseworker testified that adoption was not considered an appropriate goal for Children. *See* N.T., 10/30/24, at 87. Therefore, we discern no abuse of discretion by the dependency court by granting SPLC to Paternal Grandfather, who has had custody of Children throughout the history of this case. *See S.H.*, 71 A.3d at 978. For these reasons, Father is not entitled to relief on this claim.

### Father's Application for Post-Submission Communication

Lastly, we address Father's application for post-submission communication. Therein, Father requests that this Court accept copies of the notes of testimony of the April 2, 2025 permanency review hearing and the dependency court's order of the same date terminating these dependency matters and order the dependency court prothonotary to certify all items on the dependency court's dockets. Appl. for Post-Submission Commc'n, 4/13/25, at 1-2 (unpaginated). Additionally, Father requested to submit additional briefing regarding whether the termination of the dependency cases and the criminal court's probation condition restricting Father from having

contact with Children except for visitation supervised by CYF violates his due process rights. *Id.* at 2 (unpaginated). Lastly, Father requests that this Court issue an order "instructing the criminal court that it maintains jurisdiction to modify the condition of probation as necessary to preserve the family and to serve the best interests of [] Children, notwithstanding the pending appeal." *Id.* (some formatting altered).

Before we address the merits of Father's application, we must examine whether we have jurisdiction to grant Father the relief he requests. *See, e.g.*, *In re Z.V.*, 158 A.3d 665, 669 (Pa. Super. 2017) (stating that "[i]t is well settled that jurisdictional issues, . . . raise legal questions over which our review is *de novo* and plenary, and which may be considered *sua sponte*" (citation omitted)). It is well-established that "[j]urisdiction is vested in the Superior Court upon the filing of a timely notice of appeal." *In re R.Y., Jr.*, 957 A.2d 780, 783 (Pa. Super. 2008) (citation omitted). "Courts cannot assume jurisdiction they do not possess, nor can parties confer jurisdiction on the court; jurisdiction is conferred solely by the Constitution and laws of the Commonwealth." *Weliver v. Ortiz*, 291 A.3d 427, 437-38 (Pa. Super. 2023) (citation omitted). Further, the Judicial Code provides that "[a]n appellate court may affirm, modify, vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances." 42 Pa.C.S. § 706.

Here, Father has appealed from the dependency court's October 30, 2024 orders changing Children's permanency goals from reunification to SPLC, and not from the April 2, 2025 orders. **See** Notice of Appeal, Docket No. 204-2022, 11/5/24; Notice of Appeal, Docket No. 662-2022, 11/5/24. Therefore, this Court lacks jurisdiction to review the April 2, 2025 orders and may not grant relief in connection with those orders. **See R.Y., Jr.**, 957 A.2d at 783; 42 Pa.C.S. § 706. Likewise, this Court does not have jurisdiction to issue any order to the criminal court in an entirely separate matter even if that matter involves Father. **See R.Y., Jr.**, 957 A.2d at 783; 42 Pa.C.S. § 706. For these reasons, we deny Father's application for post-submission communication.

Orders affirmed. Appellant's application to submit post-submission communication denied. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 9/30/2025